## Lodge *against* Patterson.

One of several tenants in common, in whom an outstanding title is alleged to exist, is not a competent witness for the party alleging his title.

The possession of one tenant in common, to be a bar under the statute of limitations against his co-tenants, must be adverse.

To be adverse it is not necessary that actual notice be given to his co-tenants. It may be demonstrated by circumstances.

Where one who immediately on the death of his co-tenant, who was a brother, put up the interest of the deceased in the land at public sale and bought it in himself, entered, leased, had a survey made of it in his own name, and took the profits for more than twenty-one years, his possession was held to be adverse and to bar a recovery by his co-tenant's heirs.

ERROR to the common pleas of *Mercer* county.

This was an ejectment brought by the heirs of Nathan Patterson deceased, the defendants in error, against Lodge and Lodge, who put in the plea of Not guilty, and took defence for the undivided four-sevenths of two hundred acres, being the shares of Andrew Patterson and three others, heirs of John Patterson deceased, who owned and died seised of the tract. The plaintiffs proved that Nathan Patterson deceased bought an improvement right from Thomas Laughead, and paid 500 dollars for it; stating that the purchase was made for himself and his brother John. Laughead, when he sold, had a cabin on the south east end of the tract; some grain in the ground, and from six to eight acres cleared. Nathan Patterson deceased, went on the land in 1802, and in 1803 put up a new house on another part of the tract, in which he remained till his death about the year 1812, claiming and paying taxes for the whole tract. His family have lived on it ever since, paying the taxes. After moving into the new house, in 1803, Nathan leased the old cabin to a tenant. In 1802 or 1803, a survey containing three hundred and ninety-five acres was made for Nathan.

The defendants then produced John Chambers, Esq. as a witness, who testified that John and Nathan came out together. While the witness lived with Nathan in 1803, Nathan showed him the division line and the part which John was to have, which was the south side. He showed where the division line would have been, if John had lived. He said they held the tract between them. In 1806, Nathan said he was going over the mountains and would get some of John's money to renew his store. He told witness, after John's death, he had bought Lodge's part of John's share, and was paying it out of the store, and wanted to have a settlement with him that fall. The witness heard Nathan say he had got the share of Mary, who died.

Andrew Christy testified that after·John and Nathan came out and

[Lodge v. Patterson.]

settled on the tract, Nathan began to improve on the north end, and John on the south end; that one end was called Nathan's and the other John's; that Nathan lodged at John's until John's death in February 1803; that Nathan said he and John were partners. John had property which Nathan sold after his death at public vendue, and which amounted to from 200 to 400 dollars. The notes at the vendue were taken in Nathan's name. Nathan set up the two hundred acres called John's, and bought them in himself. After Nathan's death that end of the tract was commonly unoccupied.

The defendants then offered as a witness Nathan Patterson, Jun., a son of Andrew Patterson deceased, and grandson of John Patterson deceased, and therefore an heir at law of the said John Patterson. His testimony was objected to, and rejected by the court below, to which the defendants' counsel excepted.

The following, amongst other points, were submitted to the court below by the defendants' counsel:

2. That if the jury believe Nathan Patterson originally entered on the land as one of the heirs at law of John Patterson, and purchased the right of some of the co-heirs, the statute of limitations does not run against the other heirs of John Patterson deceased until there is an express ouster.

3. That as one of the heirs of John Patterson deceased, Nathan had a right to enter on the land, and his so entering is not an adverse possession to his co-tenants in common; and getting a survey made in his own name, paying the taxes, receiving the profits, and even setting up the land for sale and buying it in himself, unless express notice is brought home to his co-tenants of these acts, they are not such as will oust his co-tenants so as to leave the statute of limitations to run between them.

On these points the court below (Shippen, president) decided against the defendants.

The following errors were assigned.

1. In rejecting the evidence offered in the bill of exceptions.

2. In not charging as the defendants requested in the defendants' second and third points.

3. In charging that if one tenant in common enters on and takes the profits of the whole, and claiming the whole originally, for twenty-one years, the jury may and ought to presume an actual ouster, and it is not necessary to prove an actual ouster or express notice to the other heirs.

4. In charging that Nathan Patterson having the land of his brother John set up and sold at vendue, and purchasing it himself, would be a circumstance entitled to weight, as to his having afterwards entered and held the land adversely to the title now set up as a defence.

*Pearson*, for the plaintiff in error.

As to the first error, the defendants set up an outstanding title in

[Lodge v. Patterson.]

Nathan Patterson, who was proposed as a witness. Was he not a competent witness to prove it? One tenant in common is a witness for another. A verdict for the defendants would not have enabled him to get possession of the land, and he was, therefore, not interested in the event of the suit. It was indifferent to him who gained possession.

2. The entry of one tenant in common enures to the benefit of the co-tenants, unless it is shown by some distinct act to be hostile. *Tilling. Ad. Ej.* 485. Adverse possession must be notorious and avowed; and strict proof is required to show it. It cannot be presumed; but must be proved. The fact of old Nathan Patterson purchasing the interests of some of the other heirs, shows that he entered in their right as well as his own. The sale of the land and purchase of it by himself at public vendue, amounts to nothing, if the other heirs had no notice of the proceeding. *Ibid.* 50—55. Till one tenant in common gives notice to his co-tenants of his adverse claim, he holds in their right and for their benefit. Silent possession and no act of ouster, will not give exclusive possession. The receipt of rents is no ouster.

The opinion of the Court was delivered by

SERGEANT, J.—In this ejectment the defendants, Lodge and Lodge, entered on the record the plea of Not guilty; and moreover, that they took defence for four undivided seventh parts of two hundred acres, being the shares of Andrew Patterson and three others, heirs of John Patterson deceased, who owned and died seised thereof. They offered Nathan Patterson, a son of Andrew Patterson, as a witness in their behalf. The defendants having set up the title of John Patterson's heirs by way of defence against the plaintiff's claim, the question trying in this ejectment was, whether the right of the plaintiffs, who are the heirs of Nathan Patterson, or of the heirs of John Patterson, was the better. The witness, therefore, came forward to maintain his own title, and to keep those in possession who recognized it. If the defendants succeeded, the witness's title was found by the verdict, and he could call on the defendants to attorn to him, or commence an action to recover possession. In such action the proceeding here would be evidence for the purpose of proving, that the defendants asserted the witness's title to be the best. The witness seems, therefore, to be directly interested in obtaining a verdict in favour of the defendants, by whom he is called, and was on that account properly rejected.

The other errors assigned, are in the charge of the court respecting the statute of limitations. There are certain principles on this subject which have been well established by authority, and are consonant to justice and reason. The possession of a party, to be available as a bar from lapse of time under the statute, must be adverse. The possession of one joint tenant or tenant in common, is *prima facie* the possession of his companion also: and it therefore follows that

[Lodge v. Patterson.]

the possession of the one can never be considered as adverse to the title of the other, unless it be attended with circumstances demonstrative of an adverse intent; such as demand by the co-tenant of his moiety, and refusal to pay, saying he claims the whole: or, when one joint tenant bade the other go out of the house, and he went out accordingly. *Adams on Eject.* 56. On the same principle it was decided, that although the entry of one is, generally speaking, the entry of both, yet if he enter claiming the whole to himself, it will be adverse. *Ibid.*; 14 *Vin. Ab.* 512. The circumstances in the present case, evincing an actual ouster, were exceedingly strong. The plaintiff's putting up the two hundred acres for sale and purchasing them, was properly stated by the court below to be a circumstance entitled to weight: it was a claim of the whole to himself in his own right as purchaser, and of course hostile to any right which he or the other relatives possessed as heirs of his brother. This claim was persisted in by entering on the land, and leasing it as his own exclusively; by having a survey made in his own name; by taking the whole profits, and holding more than twenty-one years by a continued possession and enjoyment.

It is urged that the purchase by N. Patterson is not to be deemed a circumstance of weight, because it does not appear that the other heirs had notice of it. That, however, is not necessary to be shown as an ingredient to constitute adverse possession. The character of adverse possession is given, not by proving notice to persons interested, but by the nature of the acts done by the party. There must be a hostile intent, and that intent must be manifested by outward acts of an unequivocal kind. To constitute a disseisin, it was never held to be requisite that notice should be sent to the disseisee, or that it must be proved he had knowledge of the entry and ouster committed on his land. The open act of entry on the land, with the declared intent to disseise, constitute the disseisin. No act unexplained could be a stronger declaration of the intent of the party than his purchasing the whole right of his deceased brother in the land: and his possession cannot be construed to have been in the character of co-tenant with his brother's heirs, when he had purchased all their right, and claimed to hold it.

For these reasons we think there is no error in the charge of the court.

Judgment affirmed.