[No. 13405.   Department One. — September 14, 1891.]

JOSEPHINE WINTERBURN ET AL., APPELLANTS, *v.* JOSEPH L. CHAMBERS, ET AL., RESPONDENTS.

FINDINGS — CONSTRUCTION — REFERENCE TO EVIDENCE — LIMITATION. — The findings must be read as a whole, and not merely according to their numerical division; and if a fact found may be sustained by the evidence in the case, it must be referred to such evidence for its support, and not limited to the immediate connection in which it is placed in the findings, unless the language in which it is expressed compels such limitation.

ID. — ULTIMATE FACT — OUSTER OF HEIRS BY GRANTEE OF ADMINISTRATOR — TENANCY IN COMMON — ENTRY AND CLAIM UNDER DEED. — A finding that a grantee of an administrator entered into possession of land purporting to be conveyed to him by the administrator's deed, in his own right, and as owner of the entire estate, and not as tenant in common with the plaintiffs, who are heirs of the decedent, or with any other person, and ousted and removed the plaintiffs and all other persons having or claiming any right, title, or interest in or to such tract of land, or any part thereof, from the possession of said land, and every part thereof, finds the ouster as a distinct and ultimate fact, and does not limit it to the entry and claim under the deed.

OUSTER OF CO-TENANT — NOTICE OF HOSTILE INTENT. — The ouster of one co-tenant by another is produced by the wrongful dispossession or exclusion of the one by the other with hostile intent. Such intent is not manifested by the mere fact of possession, as in case of dispossession by a stranger, but must be established by actual or presumptive notice of the hostile intent with which the possession is held, directly or indirectly communicated to the co-tenant out of possession.

ID. — PRESUMPTIVE NOTICE. — It is not necessary that actual notice be shown to have reached the co-tenant out of possession, in order to charge him with the effect of the ouster; but the hostile intent may be manifested by acts or declarations so open and notorious, and of such a nature, that it may be readily presumed that the co-tenant out of possession is informed thereby of the hostile intent.

ID. — ADVERSE POSSESSION — ENTRY UNDER INEFFECTIVE ADMINISTRATOR'S DEED — FACTS PUTTING UPON INQUIRY — NOTICE TO HEIRS — RECORD OF DEED IMMATERIAL. — When a grantee takes exclusive possession, in

his own right, of a tract of land, under an administrator's deed purporting to convey the whole, though actually ineffective to convey more than an undivided part of the property, his entry and possession is adverse to the heirs; and from knowledge of the fact of his entry and possession, they are chargeable with knowledge of the character and purpose of the possession, which could have been obtained from inquiry, and it is immaterial whether the deed was recorded or not.

ID. — PURCHASE OF OUTSTANDING TITLE. — A party in the actual adverse possession of land by merely purchasing an outstanding legal title does not thereby impair the character of his adverse possession.

ID. — COLOR OF TITLE — ADMINISTRATOR'S DEED UNDER VOID STATUTE. — Notwithstanding an act of the legislature purporting to authorize an administrator, by name, to sell and convey all the lands of a decedent subject to the approval of the probate court was insufficient to confer authority therefor, yet a conveyance by the administrator, in pursuance of the legislative act, with the approval of the probate court, the ineffective operation of which conveyance was without the knowledge or consent of the purchaser, is sufficient to give color of title in support of his entry, and to make the possession under such entry the adverse holding of a stranger to the title, as against the heirs of the decedent.

ID. — OUSTER OF INFANTS — NOTICE. — An infant can be ousted from his possession either by a stranger or by a co-tenant, in the same manner as an adult. The ouster does not depend upon the fact that notice of the entry with hostile intent was understood or comprehended by the disseised, and such notice may be either actual or presumptive.

ID. — EFFECT OF OUSTER — SUSPENSION — STATUTE OF LIMITATIONS — PROTECTION OF INFANTS. — Ouster sets the statute of limitations running in favor of the disseisor, and the ouster and notice thereof is not suspended by the infancy of the disseised, though the effect of his knowledge thereof is suspended until his majority, and protection is given to the infant by the provision of the statute that the adverse holding must continue for five years after his majority.

APPEAL — REVIEW OF EVIDENCE — PRESUMPTION — SUPPORT OF FINDINGS — BILL OF EXCEPTIONS — SPECIFICATIONS. — It must be assumed upon appeal that all findings of fact against which the bill of exceptions contains no specification of insufficiency of the evidence to sustain them are sustained by the evidence presented at the trial, and the fact that the evidence incorporated in the record is not sufficient to support such findings cannot be considered.

APPEAL from an order of the Superior Court of the city and county of San Francisco denying a new trial.

The facts are stated in the opinion of the court.

*Edward J. Pringle,* for Appellants.

The probative fact of continuous and adverse possession found does not necessarily constitute the ultimate fact of an ouster. (*Miller* v. *Myles,* 46 Cal. 535; *Pack-*

*ard* v. *Johnson*, 57 Cal. 180; *Gage* v. *Downey*, 79 Cal. 140.) The acts *in pais* of Walsh were so vague and uncertain in their expression that unless they are materially aided by the deeds, the ouster cannot be established. His purchases of the outstanding title was a circumstance tending to show to the plaintiffs a recognition of the fact that he had not, by the administrator's deed, acquired the title of the ancestor of the plaintiffs, — at once a recognition on his part and a notice to them. The importance of these purchases is their significance to the other holders of the common title, which he was thus publicly recognizing. They are more significant, as they are more notorious than any other of his acts. (*Squires* v. *Clark*, 17 Kan. 84; *Northrop* v. *Wright*, 24 Wend. 221; *Jackson* v. *Sears*, 10 Johns. 435; *Lovell* v. *Frost*, 44 Cal. 471; *Central Pac. R. R. Co.* v. *Mead*, 63 Cal. 112.) A presumption arising from a tenancy in common may be rebutted by facts clearly establishing an ouster, such as an adverse holding under claim of title, accompanied by actual notice to the co-tenant, or so notorious as to be equivalent to notice; and the deed and entry under it are admissible in evidence only as facts tending to show an ouster, and not operating, *per se*, as an ouster. (*Culver* v. *Rhodes*, 87 N. Y. 348; *Holley* v. *Hawley*, 39 Vt. 532; 94 Am. Dec. 350; *Roberts* v. *Morgan*, 30 Vt. 325; *Leach* v. *Beattie*, 33 Vt. 195; *Miller* v. *Myers*, 46 Cal. 539; *Packard* v. *Johnson*, 57 Cal. 182; *Aguirre* v. *Alexander*, 58 Cal. 28; *Unger* v. *Mooney*, 63 Cal. 586; 49 Am. Rep. 100; *Packard* v. *Moss*, 68 Cal. 123; *Bath* v. *Valdez*, 70 Cal. 350; *Oglesby* v. *Hollister*, 76 Cal. 136; 9 Am. St. Rep. 177; *Gage* v. *Downey*, 79 Cal. 140.) The only ouster found by the court is that found to have been made by Walsh by his entry under the administrator's deed; but such deed could not impart notice of an adverse holding to any of the plaintiffs except Louisa Johnson, as all the other plaintiffs were minors at the time of its execution. (*Northrop* v. *Marquam*, 16 Or. 173; *Ware* v. *Brush*, 1 McLean, 533; *Milner* v. *Harewood*, 18 Ves. Jr. 274.) The administrator's deed, with its accompanying quitclaims,

was not such appearance of title as to give notice of an intention on the part of Walsh to absorb the whole estate, as the act of the legislature under which the administrator's deed was made was insufficient to confer authority therefor, and the quitclaim deeds only conveyed the undivided rights of the co-tenants, and an entry under the deed of an undivided interest, or a quitclaim deed, or deed of the right, title, and interest of a co-tenant, cannot create a disseisin. Acts of ownership in such case are not acts of disseisin. (Freeman on Cotenancy and Partition, 2d ed., secs. 224, 225; *Roberts* v. *Morgan*, 30 Vt. 324; *Lafavour* v. *Homan*, 3 Allen, 356; *Moore* v. *Antill*, 53 Iowa, 614; *Hume* v. *Long*, 53 Iowa, 303, 304; *Edwards* v. *Bishop*, 4 N. Y. 64.) Notice of some kind to the co-tenants of the adverse claim is a necessary element of the ouster; and there is nothing in our recording laws to affect the co-tenants with constructive notice of a deed, whatever be its character, to which they do not bear the relation of subsequent purchasers, and therefore an entry under such a deed cannot operate as an ouster. (*Packard* v. *Johnson*, 57 Cal. 182, 183; *Gage* v. *Downey*, 79 Cal. 140.)

*W. F. Goad, W. C. Belcher, E. B. & J. W. Mastick*, and *J. D. Redding*, for Respondents.

An entry into the sole possession under such a deed as in this case is an assertion of an exclusive right in severalty, and equivalent to an express declaration on the part of the grantee that he entered claiming the whole to himself. It is such a disseisin as sets the statute of limitations in motion in his favor, and the continued possession under such a deed is as much a disseisin as would have been an entry under it. (*Frick* v. *Sinon*, 75 Cal. 337; 7 Am. St. Rep. 177; *Oglesby* v. *Hollister*, 76 Cal. 136; 9 Am. St. Rep. 177; *Highstone* v. *Burdette*, 61 Mich. 54; *Coombs* v. *Persons Unknown*, 82 Me. 326; *Hall* v. *Caperton*, 87 Ala. 285; *Rutter* v. *Small*, 68 Md. 133; 6 Am. St. Rep. 434.) Conceding that the administrator's deed was void on its face, still, it was as

effectual as color of title as one apparently valid. (*Episcopal Church* v. *Newbern Academy*, 2 Hawks, 233; *Cofer* v. *Brooks*, 20 Ark. 542; *McConnell* v. *McConnell*, 64 N. C. 342; *Kruse* v. *Wilson*, 79 Ill. 233; *Murphy* v. *Doyle*, 37 Minn. 113; *Edgerton* v. *Bird*, 6 Wis. 527; 70 Am. Dec. 473; *Hamilton* v. *Bagges*, 63 Mo. 223, 244; *McClellan* v. *Kellogg*, 17 Ill. 498, 501; *Bogardus* v. *Trinity Church*, 4 Sand. 738; *Mason* v. *Ayres*, 73 Ill. 121; *Moody* v. *Fleming*, 4 Ga. 115, 120; 48 Am. Dec. 210; *Den* v. *Putney*, 3 Murph. 562; *Lewis* v. *Barnhardt*, 43 Fed. Rep. 854; *McMillan* v. *Gambill*, 106 N. C. 359; *Goodman* v. *Nichols*, 44 Kan. 22; *Swift* v. *Mulkey*, 17 Or. 532; *Hall* v. *Caperton*, 87 Ala. 285; *Whittelsey* v. *Hoppenyan*, 72 Wis. 140; *Brooks* v. *Bruyn*, 35 Ill. 392; *Reynolds* v. *Lincoln*, 73 Cal. 191; *McLeran* v. *Benton*, 73 Cal. 329; *Tryon* v. *Huntoon*, 67 Cal. 325, 328; *Wilson* v. *Atkinson*, 77 Cal. 485; 11 Am. St. Rep. 299.) Outside of the conveyances, there can be no doubt that the acts of possession of Walsh and his grantees were such as, of themselves, to justify the findings of ouster and adverse possession. (Freeman on Cotenancy and Partition, secs. 223, 230; *Warfield* v. *Lindell*, 30 Mo. 272; 77 Am. Dec. 614; *Lw* v. *Patterson*, 1 Watts & S. 191; *Unger* v. *Mooney*, 63 Cal. 586; 49 Am. Rep. 100.) The quitclaim deeds of the co-tenants were no evidence of any recognition by Walsh of any outstanding title, and did not affect the character of his possession. (*Unger* v. *Mooney*, 63 Cal. 597; 49 Am. Rep. 100; *Frick* v. *Sinon*, 75 Cal. 337; 7 Am. St. Rep. 177; *Cannon* v. *Stockmon*, 36 Cal. 535; 95 Am. Dec. 205.) An infant is capable, in law, of receiving notice (Wade on Notice, sec. 773); and the fact that some of the plaintiffs were infants at the time the administrator's deed was executed is immaterial, as ten years elapsed after the youngest became of age before the action was commenced. (*Peck* v. *Lockridge*, 97 Mo. 549; *Coombs* v. *Persons Unknown*, 82 Me. 326.) The plaintiffs will not be heard to say that they were too young to know of the deed, and yet say, in the same breath, that they were led, by that deed, to regard

Walsh as their co-tenant.    (*Frick* v. *Sinon*, 75 Cal. 337;
7 Am. St. Rep. 177.)

HARRISON, J. — The plaintiffs seek, in this action, par-
tition of a tract of land which belonged to their mother,
of which they allege that the defendants are tenants
in common with them by reason of conveyances from
other heirs of their mother.    The land in controversy
belonged to Josefa Soto de Stokes, who died intestate
September 18, 1855, leaving a husband, James Stokes,
and fourteen children surviving her.    An act of the legis-
lature was passed March 25, 1857, authorizing her ad-
ministrator to sell her real estate subject to the approval
of the probate court of Monterey County, in which the
administration of her estate was pending, and upon such
approval to convey the same to the purchaser.    March
16, 1858, "said James Stokes, professing to act under
the authority of the said act, and as the administrator
of said Josefa, made and entered into a contract with
one R. J. Walsh, by the terms whereof he, as adminis-
trator of the estate of said Josefa Soto de Stokes, con-
tracted to sell to said Walsh, and said Walsh contracted
to buy," the tract of land described in the complaint,
subject to the approval of said probate court.    Upon
receiving the report of said sale said probate court
approved the same, " and after such approval,.and on
the 21st of April, 1858, the said Stokes, still represent-
ing himself to be, and professing to act and acting as,
administrator of the estate of his said deceased wife, and
in his own right, made, executed, and delivered to said
R. J. Walsh a deed of conveyance purporting to convey
to him the said land in consideration of the sum of
$14,376.43."    The said purchase price was the full value
of the land at the time of the said sale, and the deed
therefor was recorded in the office of the county recorder
for Colusa County on the twelfth day of August, 1858.
At certain dates thereafter, viz., March 31, 1860, and
June 11, 1863, Walsh took deeds purporting to convey
the land from persons who had received conveyances

from other heirs of Josefa, which were also recorded in said county recorder's office. Walsh, upon receiving the deed from the administrator, immediately entered into and took possession of the said land thereunder, and on the thirteenth day of August, 1858, sold the northerly half thereof to J. W. McIntosh, at the same price per acre at which he had purchased the same, and received from him a portion of the purchase-money, and by a written contract agreed to convey the same to him upon the payment of the balance of the purchase-money, and at the same time delivered to him the possession of the said northerly half. No conveyance of the land was made to McIntosh until October 23, 1867, after the death of Walsh, when his executors, under the order of the probate court, conveyed this northerly half to him; but the court finds that "immediately upon his purchase from R. J. Walsh the said J. W. McIntosh entered into and took possession of the northerly half of the said tract of land, and during the years 1858 and 1859 inclosed all of said half, except about 150 acres in a triangular shape on the westerly or back side, with a good, substantial fence, and thereafter continuously up to the twenty-third day of September, 1868, kept the same so inclosed, and used the same for cultivation and pasturage, and paid all taxes and assessments levied thereon"; and also finds that such possession of said northerly tract was thereafter maintained by the defendant Lewis H. McIntosh, to whom John had sold and conveyed the same, September 23, 1868.

Walsh died testate April 30, 1866, and thereafter, viz., March 12, 1872, the probate court of Colusa County, in which administration of his estate was had, distributed the southerly half of said land to the defendants Joseph L. Chambers and Charles R. Chambers, in accordance with the provisions of his will.

The court also finds that "during the year 1858 said Walsh inclosed the southerly half of the said land with a good, substantial post and plank fence; and thereafter, up to the time of his death, maintained and kept the

same so inclosed, and kept and held the open, notorious, actual, and exclusive possession of all the said southerly half of said land, adversely to all the world, and used the same for cultivation and pasturage, and paid all taxes and assessments levied thereon, and dealt with and used the same as his own property"; and also that after the death of Walsh his executors kept and maintained a similar possession until the entry of the decree of distribution in his estate, and that thereafter such possesession was kept and maintained by the defendants Chambers. The court further finds, —

"32.   The said R. J. Walsh entered into and took possession of the land purporting to be conveyed to him by the said deed of April 21, 1858, in his own right, and as owner of the entire estate, and not as a tenant in common with the plaintiffs, or any or either of them, or with any other person, and ousted and amoved the plaintiffs, Josephine Winterburn, Lucy Mills, Catherine Sherwood, Louisa Johnson, William Stokes, and Domingo Stokes, and all other persons having or claiming any right, title, or interest in or to such tract of land, or any part thereof, from the possession of said land and every part thereof.

"33.   More than five years, to wit, more than six years, elapsed between the time when the youngest of the plaintiffs arrived at majority and the time of the commencement of this action, during all which time the defendants Joseph L. Chambers and Charles R. Chambers had and held, and claimed to hold in their own right absolutely, as the devisees of the said R. J. Walsh, deceased, and under the said decree of distribution made by the probate court of the county of Colusa, all the southerly half of the said land, and were, at the time of the commencement of this action, the owners, in fee, thereof; and all which time the defendant Lewis H. McIntosh had and held, and claimed to hold absolutely in his own right as the grantee of said Walsh, and under mesne conveyances sufficient in form to convey the whole title, all the northerly half of the said land, and

he was, at the time of the commencement of this action, the owner, in fee, of the said northerly half."

The present action was commenced on the twentieth day of May, 1878, and at the time of its commencement the plaintiffs were of the following ages: Louisa Johnson, forty-seven years; Catherine Sherwood, thirty-four years; Josephine Winterburn, thirty-one years; Lucy Mills, twenty-eight years; William Stokes, thirty-two years; and Domingo Stokes, through whom the plaintiff Eugene Sherwood claims, thirty-eight years.

As conclusions of law, the court found that by virtue of such ouster and adverse possession the title of the plaintiffs was extinguished and their right of action barred by the statute of limitations. It also found the following as one of its conclusions of law, viz.: "That the said R. J. Walsh, under his deed of April 21, 1858, acquired title to only the undivided one third of the land in his deed described, and became, by operation of law, but without his consent or knowledge, a tenant in common with the children of the said Josefa Soto de Stokes, deceased, but that by his entry, under said deed, into the absolute and exclusive and adverse possession of said land, and his ouster of all his said co-tenants from the possession thereof, and by the maintenance of such exclusive and adverse possession by said Walsh, his grantees, administrators, devisees, and assigns, openly, notoriously, and continuously, under claim of absolute title for more than five years after each and all the plaintiffs, and each and every of the surviving children of the said Josefa Soto de Stokes, had attained majority, all the right, title, and interest of the said plaintiffs, and of each of them, was extinguished."

Judgment was entered in favor of the defendants. A motion for a new trial, made by the plaintiffs, was denied, and from the judgment and order denying said motion the plaintiffs have appealed.

The basis of the judgment by the court below is, that the plaintiffs were ousted from the land more than five years prior to the commencement of the action, and that

an adverse possession having been maintained under such ouster for more than said period of five years, their right of action is barred.   This decision is assailed by the appellants upon two grounds, viz.: 1. That the finding of ouster is, by the terms of the finding itself, limited to an ouster resulting from the entry by Walsh, under the deed of the administrator; and 2. That the evidence fails to show facts sufficient to constitute an ouster.

We cannot agree with counsel for appellants that it was the intention of the court, by its finding of an ouster, in finding 32, above quoted, to limit such finding to an ouster by the mere entry by Walsh under the deed. The court does not, in the finding itself, limit the ouster to the mere entry and claim under the deed, nor does it, after finding such entry and claim, find that he *thereby* ousted and amoved the plaintiffs; but the ouster is found as a fact distinct from such entry and claim.   The court, moreover, in its conclusion of law above quoted, finds that Walsh "by his entry under said deed into the absolute and exclusive and adverse possession of said land, *and* his ouster of all his co-tenants from the possession thereof, and by the maintenance of such exclusive and adverse possession," extinguished the title of the plaintiffs.   It thus appears that the ouster found by the court does not depend upon the mere entry and claim; that while the entry and claim are elements therein, they do not solely constitute the ouster.

The findings must be read as a whole, and not merely according to their numerical division.   Because it may be impracticable to embrace all the facts in a case under a single finding, it does not follow that each fact that is separately found is to be considered distinct and disconnected from all the others.   Especially when a fact is the ultimate fact resulting from several others is it improper to limit such conclusion.   If the fact found may be sustained by evidence in the case, it must be referred to such evidence for its support, and not limited to the immediate connection in which it is placed in the findings, unless the language in which it is expressed

compel such limitation. The finding of ouster must be regarded as a finding distinct in itself, and if there is evidence in its support, it must be upheld and referred to such evidence, rather than to the facts in the finding in which it is declared.

An ouster of one co-tenant by another is produced by acts of the same character as will produce any other ouster. In either case it is the " wrongful dispossession or exclusion of a party from real property who is entitled to the possession." In each case the same kind of possession is required, and it must be taken and held with the same hostile intent. In the case of a dispossession by a stranger, the fact that such stranger takes the actual and exclusive possession of the land is of itself a notice of the character of such possession, and of the intent with which it was done. In the case of the cotenant, however, the intent with which the possession is taken is not manifested by the mere fact of possession, but must be established either by actual notice or by acts or declarations so open and notorious, and of such a nature, that it may readily be presumed that the cotenant out of possession is informed thereby of the hostile intent with which the possession is held. It is the intent which determines the character of the possession; but it is essential that this intent be in some mode, either by actual or presumptive notice, directly or indirectly, communicated to the other co-tenant. This intent is not the secret purpose of the occupant, but is the purpose which the acts themselves manifest, and the acts done must be manifested to the person against whom the ouster is directed. It is not necessary that actual notice be shown to have reached the co-tenant, in order to charge him with the effect of the ouster. The ouster must be complete, and it must be found that notice thereof was given; and inasmuch as ouster is the ultimate fact to be found by the court, it is sufficient if it is sustained by the evidence, or is the necessary result from the probative facts which are found. Being a fact to be found from evidence, it is entitled to the same

presumptions of correctness as attend any other finding of fact depending upon the weight or sufficiency of evidence.

It appears from the record herein that in March, 1858, Walsh made a contract with the administrator of the estate of Josefa for a purchase of the whole of the land described in the complaint, at its full value, subject to the approval of the probate court of Monterey County; that the sale was approved by said court, and that in pursuance thereof a conveyance was made to him in the succeeding month, and that he paid the whole of the purchase price to the said administrator; that he thereupon immediately took possession of the whole tract of land, and in August following sold to McIntosh the northerly half of the tract at its full value, executed to him a contract of sale therefor, gave him the possession, and thereafter received from him the price for the same; and that McIntosh, upon receiving said contract of sale, took possession of the tract, and thereafter occupied the same as in his own right; that Walsh inclosed the southerly half of the tract with a substantial fence, and occupied and cultivated it openly and exclusively until his death, in 1866; caused it to be surveyed and also to be assessed in his own name, paid all the taxes thereon, made a testamentary disposition thereof, as well as frequent and open declarations of his purchase and ownership of the entire tract. These acts were sufficient to clearly indicate the intent on his part to claim the entire estate as his own to the exclusion of all other persons, and were also acts of such character and performed with sufficient publicity and notoriety to justify a presumption that they were communicated to and known by the plaintiffs.

The fact that the deed to Walsh was not placed upon record until after he had made his contract of sale with McIntosh, and the entry by McIntosh upon the northern portion of the tract, is immaterial, and it is equally immaterial for the purpose of characterizing his entry, whether the deed was recorded or not. The entry into

possession of the tract by Walsh was itself a notice to the plaintiffs that he had some claim to the land. The mere possession was not of itself evidence of his claim, but it was notice to them sufficient to put them upon inquiry, and to charge them with the knowledge that would have been received from such inquiry. They knew that he was not one of the heirs of their mother, and that the immediate source of his claim to the land was different from theirs; and when they saw him in possession of the land, they were charged with notice of the character and purpose with which such possession was taken. They were not at liberty to presume that he was a claimant under one of their co-tenants, any more than that his entry was hostile to them all. Being informed of his entry, and presumptively of its character, they were charged with a knowledge of all the facts attending it which an inquiry would have called forth. " The possession of other persons than [their co-tenants] was enough to put [the plaintiffs] on inquiry, under the rule in *Fair* v. *Stevenot,* 29 Cal. 486. If they had inquired, they would have discovered the hostile character of the possession. This means of notice constituted notice." (*Unger* v. *Mooney,* 63 Cal. 596; 49 Am. Rep. 100.) His entry upon the land was open and notorious, and it was as much a notice to them that he was entering with bow and spear as it was that he entered under a deed of conveyance. Being thus put upon inquiry, and charged with the knowledge of the facts which such inquiry would have disclosed, they were informed that he had taken possession of the land under the purchase by him of the entire interest therein held by their mother at her death, in accordance with the terms of the contract of sale made by him with the administrator of her estate, and that the same had been approved by the probate court, and that he had paid for the land its full value. Even if it be conceded that the deed to him purported to convey only the interest of Stokes, and although, in the absence of any other facts, his entry might have been presumed by them to have been in accordance with the deed, this fact would not

have lulled them into the belief that he had succeeded to only that interest, and was their co-tenant, for the deed was not placed upon record until several months afterwards. His entry was an act distinct from the deed executed to him, and they were charged with notice that such entry was with hostile intent, and with a claim to the entire and exclusive ownership of the land. By such notice there was imputed to them information of not merely the language and terms of the deed, but of all the facts connected with his entry. The possession of Walsh did not appear to them to be that of one whom they knew to be a co-tenant, and they were not entitled to presume that his acts of possession were in recognition of their rights. A co-tenant out of possession, in order to avail himself of the presumption attending the acts of a stranger in possession, must show that such stranger is his co-tenant. There is no presumption of such co-tenancy, and in the absence of such showing, he is chargeable with notice of the real character of his claim. Being chargeable with such notice, he is also chargeable with the knowledge that the acts done by him are done in consistency with his entry and his claim, whatever the same may be. The purchase by Walsh in 1860 and 1863 of other interests did not impair the character of his entry in 1858. He did not enter into possession of any portion of the land under the subsequent conveyances, and his original entry can neither be qualified nor his title impaired by such purchase. He was buying in an outstanding claim, not as a co-tenant with the plaintiffs, but with a claim hostile to them from the beginning.

After the ouster by Walsh, the adverse possession taken by the defendants under conveyance from him was referable to such ouster, and it was not requisite to find that they had made any additional ouster to that which was to be inferred from the ouster by Walsh, under whom they entered. Their possession under such entry was the adverse holding of a stranger to the title, and not referable to the entry of a co-tenant. Their

entry was the basis of a new title, and, with an adverse holding for five years after the plaintiffs had attained majority, tolled their rights. We do not understand that appellants controvert the proposition that if the evidence is sufficient to establish the ouster by Walsh, as found by the court, there has been an adverse possession thereunder for more than five years prior to the commencement of this action. We are of the opinion that the character of the acts of Walsh, as well as their notoriety, were such as to justify the court in a presumption that the plaintiffs had notice thereof, and that they constituted a sufficient basis for its finding of the ouster by Walsh. (Freeman on Cotenancy and Partition, secs. 221, 223; *Warfield* v. *Lindell*, 30 Mo. 282; 77 Am. Dec. 614; *Lodge* v. *Patterson*, 3 Watts, 77; 27 Am. Dec. 335; *Dikeman* v. *Parrish*, 6 Pa. St. 227; 47 Am. Dec. 455.)

It is, however, contended, on behalf of the appellants, that inasmuch as by the terms of the deed from the administrator to Walsh it must have appeared to him that there was thereby conveyed only an undivided interest in the land, his entry must be deemed to have been in accordance with the terms of the deed, and that his acts thereunder, being consistent with such entry, did not manifest any intent to claim the entire ownership. We think, however, that the facts presented by the record do not uphold this claim of the appellants. It may be conceded that the conveyance by Stokes, as administrator, under the authority of the legislative act, was utterly unavailing to transfer to Walsh any title to the lands in controversy, and that the court correctly found that the only interest therein which he obtained by the deed was that which passed by the conveyance of Stokes in his own right, which was in fact the one third which he took as surviving husband of Josefa. The court, however, found that although by operation of law this deed made him only a tenant in common with the children of Josefa, yet such effect of the deed was without his knowledge or consent, and that his entry was of such a character as to operate as an ouster of said chil-

dren. The court also found that under the act of the legislature Stokes was authorized, as administrator, to sell "the real estate of the deceased," and that, professing to act under the authority of that act, he made a contract with Walsh to sell a tract of land "embracing all the land involved in this action"; and that after the approval of the sale by the probate court, he gave to Walsh a deed of conveyance "purporting to convey to him the said land." Under these facts, the deed to Walsh was sufficient to give color of title in support of his entry, notwithstanding the fact that the act under whose authority it purported to have been made was insufficient to confer authority therefor.

We must assume that these findings of fact are sustained by the evidence which was presented at the trial, as the plaintiffs have not, in their bill of exceptions, made any specification of insufficiency in that respect. Upon an appeal, it must be assumed by us that all findings of fact against which the bill of exceptions contains no specification of their being unsupported by the evidence have been correctly found. The fact that there is some evidence in the record bearing upon such finding which is not in itself sufficient to support it cannot be considered. It is only when the finding is directly challenged in this respect that we must assume that all the evidence bearing upon the subject before the court below which would sustain the finding is in the record. If the finding itself has not been objected to, there is no occasion for inserting such evidence in the bill of exceptions, and the respondent is not to be prejudiced by any failure to have it included therein.

The appellants, in their specifications of insufficiency of evidence, do not question the correctness of the foregoing findings of fact, their specification being "the insufficiency of the evidence to justify the finding of fact that R. J. Walsh entered and took possession of the land purporting to be conveyed to him by said deed of April 21, 1858, in his own right, and as owner of the entire estate, and not as a tenant in common with the plain-

tiffs, or any or either of them, or with any other person." It is only the entry and taking possession in his own right which they allege is not sustained by the evidence; but as the entry and taking possession are fully established by the evidence, their argument is limited to the character in which said entry was made, and the possession thereunder held and taken. Upon this point they urge that although the entry may have been made with a purpose on the part of Walsh to oust the plaintiffs, yet such purpose is insufficient to constitute an ouster unless notice thereof is brought home to the other tenants, so that they may be informed thereof and protect themselves; and they further urge that inasmuch as some of the plaintiffs were infants both at the time of Walsh's entry and at his death, no notice to them could be available, and that, consequently, as the only ouster found by the court is an ouster by Walsh, it is not sustained by the evidence.

The fact that some of the plaintiffs were infants at the time of the entry did not diminish the effect of the ouster. The entry by Walsh, and his subsequent acts under such entry, were not deprived of their hostile character, and did not fail to constitute an ouster, merely because the plaintiffs were at that time minors. An infant can be ousted from his possession by either a stranger or a co-tenant. The ouster does not depend upon the fact that the notice of the entry with hostile intent has been either understood or comprehended by the disseised, whether such entry be by a stranger or by a co-tenant. If in either case the disseisor should declare to the infant his intent to exclude him from the possession, and should physically remove him from the land, and thereafter hold the same openly and adversely, the ouster would not be suspended until the infant had attained majority, but would be complete at the date of the act and declaration. The effect which the notice will produce is not the test of its sufficiency, and the same acts and declarations which constitute an ouster apply to an infant as well as to an adult, whether such notice be actual or pre-

sumptive. The sufficiency of their notoriety is to be judged from the character with which they are made or performed, and not from the manner in which they are perceived.  " To constitute a disseisin, it was never held to be requisite that notice should be sent to the disseisee, or that it must be proved that he had knowledge of the entry and ouster committed on his land." (*Lodge* v. *Patterson*, 3 Watts, 77; 27 Am. Dec. 335.) Ouster sets the statute of limitations running in favor of the disseisor, but protection is given to the infant by the provision of the statute that the adverse holding must continue from that date until the expiration of five years from his attaining majority. The sufficiency of the notice on the part of the disseisor, at the time it was given, is not to be diminished by anything occurring subsequent thereto. The knowledge that the infant would have had from the notice, if he had been capable of comprehending the same, is imputed to him as of the date of the notice as fully as if he were an adult, but the effect of such knowledge is suspended until his majority.

The judgment and order denying a new trial are affirmed.

PATERSON, J., and GAROUTTE, J., concurred.

Hearing in Bank denied.