[Civ. No. 1293. Fourth Appellate District.—February 9, 1934.]

A. C. HELVEY, Appellant, v. HELEN C. LILLIS et al., Respondents.

Clarence H. Wilson and Anderson & Anderson for Appellant.

Barbour, Kellas & Backlund and Feemster, Perkins & McCormick for Respondents.

BARNARD, P. J.—This is an action to quiet title to two quarter-sections of land in what is known as the Kettleman Plains, being partly in the county of Kings and partly in the county of Fresno. The surrounding country is sparsely settled and this land, together with large tracts of land around it, has been used for many years only for the purpose of pasturing stock. Patents covering the two parcels were issued by the United States to Edward B. Perrin in 1908. Beginning in 1909 and continuing to 1917 one S. C. Lillis, as lessor, leased the land each year to a tenant for pasturage purposes. On January 17, 1918, a decree of distribution was entered in the estate of S. C. Lillis, distributing the property

to Lucy E. Lillis and Helen C. Lillis, the decree, however, recognizing that H. H. Welsh had an interest in the property. On January 18, 1918, Lucy E. Lillis and Helen C. Lillis, by quitclaim deeds, conveyed a one-half interest in the land to H. H. Welsh. These deeds were recorded on May 20 and May 21, 1924, respectively. Under date of January 22, 1918, Lucy E. Lillis conveyed all her interest in the property to Helen C. Lillis, the deeds being recorded on January 31, 1918. On January 24, 1931, the plaintiff obtained a quitclaim deed covering these properties from Edward B. Perrin and, shortly thereafter, commenced this action to quiet his title. A cross-complaint was filed on behalf of Helen C. Lillis and H. H. Welsh asking that title be quieted in each of them to the extent of a one-half interest in the property. The court found in all respects in favor of these cross-complainants and from the judgment entered, the plaintiff has appealed.

It is first contended by the appellant that the evidence is not sufficient to show any "color of title" in the respondents. It is argued that the decree of distribution and the deeds referred to are not sufficient for this purpose since they are in no way connected up with the patentee. This contention is without merit. If the instruments relied on for such a purpose were properly connected up they would show full title and not merely color of title. The claim of respondents is founded upon the decree of distribution and the deeds referred to. We think these are sufficient to constitute a claim of title founded upon a written instrument, judgment or decree, within the meaning of section 323 of the Code of Civil Procedure. The respondent Lillis testified that she entered into possession of the land under this decree of distribution, that thereafter tenants were in possession under lease from her, that she took possession, paid the taxes, and received the rents believing that she had acquired full title through the decree of distribution and the deeds, that she continued in this belief until this action was filed, and that she leased the property, paid the taxes and received the rents for the benefit of herself and of the respondent Welsh. Whether or not the respondents' predecessor had acquired title to the land by grant or by adverse possession, after his death the respondents for the first time claimed title to the land under the instruments

referred to and their good faith not being attacked, it must be held that these instruments were sufficient to constitute color of title within the rules applying in such a case (*Owsley* v. *Matson,* 156 Cal. 401 [104 Pac. 983]; *Akley* v. *Bassett,* 189 Cal. 625 [209 Pac. 576]; *Brind* v. *Gregory,* 122 Cal. 480 [55 Pac. 250]; *Gregory* v. *Gregory,* 102 Cal. 50 [36 Pac. 364]; *Winterburn* v. *Chambers,* 91 Cal. ·170 [27 Pac. 658]; *Gavin* v. *Phillips,* 12 Cal. App. 34 [106 Pac. 424]). We think this is especially true since the circumstances were such as to peculiarly warrant the respondents in believing that they had acquired good title to the land through the instruments referred to. The decree of distribution in the estate of S. C. Lillis recited that the land stood of record in the name of S. C. Lillis, but that H. H. Welsh had an undivided equitable one-half interest therein under an oral agreement of trust whereby S. C. Lillis held the legal title to said undivided one-half interest for H. H. Welsh. It appears that the original patents which had been issued to Perrin were in the possession of the respondents, as they produced them at the trial. S. C. Lillis, as lessor, had leased the property to tenants each year from 1909 until 1917. He had paid the taxes on the property at least after 1912, and it was stipulated that the respondents had these tax receipts covering each year from 1912 to 1917, inclusive. It was also stipulated that the respondents held tax receipts for each year from 1918 to 1930, inclusive, except for one parcel for the year 1922. Helen C. Lillis testified that she paid the taxes for the year 1922 on both properties and all taxes for each year from 1918 to 1930, inclusive.

The only other point raised is that the occupation of these lands by the respondents was not hostile, exclusive, continuous or uninterrupted. In effect, it is urged that the general public allowed sheep and cattle to roam over the land at will and that no such occupation or possession for pasturage purposes as is contemplated by the code section was proved by the respondents. The respondent Lillis testified that she took possession of the property under the decree of distribution and, for herself and the other respondent, leased the land during the years from 1918 to 1931, inclusive; that a tenant was always in possession for the respondents during all those years; and that no one else claimed any rights thereon during that time. It not only appears

that these lands were used by tenants of the respondents and their predecessor for twenty-three consecutive years, but that the same tenants used the land over long periods. The lands were used by two tenants, jointly, from 1909 to 1914, and from 1915 to 1931 they were used by one tenant, a man named Kimble. There is ample testimony given by the tenants, and others, to the effect that these tenants were in possession of the land at all times when any feed was available thereon and when pasturage could be carried on; that ordinarily they were there with their stock from November or December until the next May or June; that during the rest of the year no pasturage was available, it being a dry country; that during the remainder of the year, aside from feed, stock could not be cared for without making special arrangements for water; that in some years all of the feed was not used in the spring, but a portion was saved for the fall; and that at such times someone was kept there to see that no one else pastured the land. There was also testimony that when these tenants were not on the job other stockmen in the vicinity would notify them in case anyone trespassed, that they then ordered the trespasser off, and that they always departed immediately. There was considerable testimony that all of the stockmen in the vicinity knew that these lands were leased by these particular tenants and that the feed was theirs; that they would not allow their stock to trespass on this property; and that they all assisted in seeing that transients who passed along the roads did not stop for pasturage, but kept their flocks moving. There is ample evidence that during all of these years no other stock was permitted on the land except for a few strays which were promptly driven off, and except for one or two occasions when a tenant had permitted another stockman to pasture there after he had himself taken all the feed he wanted. The appellant relies on other testimony to the effect that transients frequently camped on the land and allowed their stock to pasture there; that the neighbors had often allowed their cattle and sheep to run there; and that during these years as much as one-fourth of the feed had been taken by parties other than the tenants. This evidence merely raises a conflict, which has been passed upon by the trial court.

In view of the character of the land and the uses to which it might be put, the evidence is sufficient to show the sort

of pasturage which is contemplated by the code section, and supports the findings and judgment. It fully appears that the occupation and use of these lands through these many years was well known and well recognized by all those living and doing business in that section of the country. We think the situation, thus long continued, was sufficient to put the record owner on his guard with respect to the rights claimed by the respondents. It is significant that the patentee made no claim for more than twenty years and paid no taxes for at least eighteen years, although another party had taken possession of the land the next year after the patents were issued, and that after the lapse of all those years his only action was to quitclaim the property to another.

For the reasons given, the judgment is affirmed.

Marks, J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 9, 1934.