[Civ. No. 19579. Second Dist., Div. Two. Nov. 24, 1953.]

BLANCHE WILKERSON, Respondent, v. FLORENCE THOMAS, Appellant.

Kendall & Howell for Appellant.

Edward C. Maxwell and Robert B. Maxwell for Respondent.

FOX, J.—Defendant appeals from a judgment quieting title in plaintiff to an undivided one-half interest in certain property located in Ventura County.

The property here in controversy was originally patented by the United States Government in 1918 to Charles B. Winninger, who was the brother of Mrs. Blanche Wilkerson, hereafter referred to as the plaintiff. The evidence discloses that at about the time Mr. Winninger received his patent, he came to an agreement with H. C. Wilkerson, plaintiff's since-deceased husband, by the terms of which both were to hold an undivided half interest in the land which Winninger was to work and from the proceeds of which he was to pay all the taxes. Winninger's action was motivated by the assistance Wilkerson had rendered Winninger in procuring the patent. To effectuate this arrangement, Winninger executed and delivered to Wilkerson a grant deed purporting to convey the property which is the subject of this action. The deed recites in part that Winninger

". . . does hereby GRANT to H. C. Wilkerson . . . a whole and undivided one-half interest in that real property . . . described as follows:

"A whole and undivided one half interest in the northeast quarter of Section twenty-two in Township eight north of Range nineteen west of San Bernardino Meridian, California. . . ."

Plaintiff and her daughter, Mrs. Norton, then 15 years old, both testified that they were present when Winninger delivered this deed to Wilkerson, at which time he asserted that he was giving Wilkerson an undivided one-half interest in the property.

Subsequent to the making of this grant to Wilkerson, Winninger was married to Harriet B. Winninger. Thereafter, Winninger conveyed a one-half interest in the real property here involved to a third party, who immediately reconveyed it to Charles B. Winninger and Harriet B. Winninger, his wife, as joint tenants. Harriet B. Winninger was the mother of Florence Thomas, hereafter called defendant, by an earlier marriage. In December, 1924, Harriet wrote to Wilkerson to inform him that her husband was placing a mortgage on his half of the property because he required treatment due to ill health.

Winninger died in May, 1925, and full title to the one-half interest in the joint tenancy property thereby passed to Harriet. In August, 1925, Harriet quitclaimed all her interest in the said property to defendant, who recorded this quitclaim deed. Beginning in 1926, defendant paid all taxes on the entire acreage, which she rented out and from which she alone received the rentals. During the years 1926-1934, the property was assessed on the rolls, and set forth in the tax bills received and paid by defendant, as a one-half interest in defendant and a one-half interest in H. C. Wilkerson. However, in 1933, the estate of Charles B. Winninger was reopened and an additional one-fourth interest in the said property was conveyed by probate decree to Harriet, who, in December, 1933, purported to convey this additional one-fourth interest to defendant. Defendant recorded this latter deed in 1933, whereupon the property was reassessed in 1934 on the basis of three-fourths to the defendant and one-quarter to H. C. Wilkerson. From 1935 to the time of the trial, defendant continued to pay all the taxes and to receive all the income from the entire property. Defendant made no improvements on the property beyond the maintenance of the fences. There is no

evidence that plaintiff had knowledge of the recording of the second deed.

In 1943 H. C. Wilkerson died, following which his estate was set aside to plaintiff in a proceeding in which no reference was made as to any interest in the property involved in the instant case. Plaintiff testified that "at least ten years ago" she had received a letter from defendant containing an offer to buy her fourth of the property. Plaintiff replied that she had no fourth, but a half interest, and did not wish to sell. She received no reply to this letter. Plaintiff testified that she had never had any conversation with defendant in which the latter informed her that she was claiming a three-fourths interest in the property. Defendant testified that she never wrote to plaintiff to advise her of any claim she was making to a three-fourths interest.

Sometime in 1947 or 1948 plaintiff's daughter, Mrs. Norton, visited defendant in plaintiff's behalf to discuss a division of the land and to adjust the respective interests of the parties. During the conversation, defendant asserted that she was claiming a three-fourths interest in the property. Following abortive correspondence between attorneys for the respective parties, plaintiff applied for a reopening of the estate of H. C. Wilkerson, and after being appointed as administratrix therein, thereupon brought this action.

Plaintiff's complaint is stated in two causes of action, the second of which is in the conventional form of a quiet title action. The first cause of action alleges Winninger's execution of the deed to Wilkerson for the purpose of conveying an undivided one-half interest to Wilkerson, and, in effect, pleads for a judicial declaration that plaintiff is entitled to such interest through a construction of the ambiguous language of the instrument. Defendant answered the quiet title action by way of general denial, and raised the special defenses of laches and the statute of limitations. She also pleaded, by way of cross-complaint, adverse possession and payment of taxes for more than five years on three-fourths of the property.

Upon the facts already recited, the court found that, by mistake of the person who drew the deed, the grant deed from Winninger to Wilkerson contained the following ambiguous description: "A whole and undivided one-half interest in that real property . . . described as follows: A whole and undivided one-half interest in the northeast quarter of Section 22 . . . "; that it was the intention of Winninger to grant an undivided one-half interest in the property de-

scribed, and that he did in fact by such deed convey an undivided one-half interest in this property, of which plaintiff is now the owner. The court further found that plaintiff's action was neither barred by any statute of limitations nor by laches; that plaintiff and defendant were cotenants; that defendant's possession of the land was permissive and not hostile; and that defendant's possession and payment of taxes did not constitute adverse possession of a three-fourths interest by defendant. The judgment entered decreed that plaintiff and defendant each owned an undivided one-half interest in fee of the entire acreage patented to Charles B. Winninger.

Defendant's initial contention is that plaintiff's first cause of action, being one to correct the deed on the ground of mistake, is barred by Code of Civil Procedure, section 338, subdivision 4, which provides that an action for relief on the ground of mistake must be brought within three years. This argument is not here tenable. It may be remarked, at the outset, that the court was confronted with a grant deed couched in language which, by its rather bizarre and equivocal terms, required interpretation as to whether it was designed to convey an undivided one-half or an undivided one-fourth interest to H. C. Wilkerson. This ambiguity was engendered by the repetition of the cumbersome phrase ''a whole and undivided one-half interest'' both in the descriptive portion and in the granting clause of the deed. The governing purpose in construing a deed is to ascertain from a consideration of the entire document, the intention of the parties as expressed in the deed itself. (*Slavich* v. *Hamilton*, 201 Cal. 299, 304 [257 P. 60]; *Shultz* v. *Beers*, 111 Cal.App.2d 820, 822 [245 P.2d 334].)

 The determination of the court that the deed in question was a conveyance of an undivided one-half interest is a reasonable construction of the language of the instrument. (See *Central Pac. R. Co.* v. *Beal*, 47 Cal. 151.) This is buttressed by the fact that parol evidence was received to explain the ambiguous terms and to enable the court to arrive at the true intent of the parties. (*Slavich* v. *Hamilton, supra*; *Boyer* v. *Murphy*, 202 Cal. 23 [259 P. 38]; *Sprague* v. *Edwards*, 48 Cal. 239; *Brannan* v. *Mesick*, 10 Cal. 95.) The evidence before the court clearly establishes that at the time of the delivery of the deed it was intended that an undivided one-half interest should vest in Wilkerson. Events such as the fact that Winninger placed only one-half of the property

in joint tenancy with his wife, and other conduct and declarations convincingly demonstrate Winninger's recognition of Wilkerson's common ownership with him of one half the land. (See *Hay* v. *Allen*, 112 Cal.App.2d 676, 682 [247 P.2d 94] ; *Jones* v. *Wilterding*, 100 Cal.App.2d 210, 212 [223 P.2d 91].)

■ Since in this case it was not necessary to reform the deed or to correct a mistake but merely to construe the terms of the deed in order to determine the intent of the parties, it is obvious that the three-year statute of limitations here pleaded (Code Civ. Proc., § 338(4)) has no application.

The same result also follows when the case is approached from its other aspect. An examination of plaintiff's complaint discloses that it is, in essence, an action to quiet title, to which has been joined an ancillary cause of action requiring the court to declare the meaning of a deed ambiguous on its face. ■ It has been consistently held that a complaint to quiet title, in which, incidental thereto, there is joined an action such as fraud, mistake or reformation, or cancellation of an instrument, constitutes but a single cause of action. (*Thompson* v. *Moore*, 8 Cal.2d 367, 370 [65 P.2d 800, 109 A.L.R. 1027] ; *Stephan* v. *Obersmith*, 48 Cal.App.2d 199, 202 [119 P.2d 388] ; *Hanlon* v. *Western Loan & Bldg. Co.*, 46 Cal.App.2d 580, 604 [116 P.2d 465].) ■ The rationale underlying this proposition derives from the fact that a plaintiff's cause of action is simply the obligation sought to be enforced against the defendant. (*Frost* v. *Witter*, 132 Cal. 421, 426 [64 P. 705, 84 Am.St.Rep. 53] ; *Klopstock* v. *Superior Court*, 17 Cal.2d 13, 20 [108 P.2d 906, 135 A.L.R. 318].) Necessarily, the conduct or circumstance which gives rise to the cause of action is not to be confused with the cause of action itself. (*Turner* v. *Milstein*, 103 Cal.App.2d 651, 657 [230 P.2d 25].) ■ It is therefore manifest that plaintiff's instant action, whose basic purpose is to quiet title in land, is not controlled by the limitations embodied in Code of Civil Procedure section 338(4). (*Murphy* v. *Crowley*, 140 Cal. 141, 144-145 [73 P. 820] ; *Newport* v. *Hatton*, 195 Cal. 132, 144 [231 P. 987].)

There is likewise no merit in defendant's argument that plaintiff's case is defeated by the limitations of section 318 of the Code of Civil Procedure, which provides that ''No action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was

seized or possessed of the property in question, within five years before the commencement of the action." ■ Since plaintiff's claim is based on a deed which conveyed to her an undivided one-half interest in the property, she held title to such an estate, and was in possession thereof as well, under the established rule that exclusive occupancy by a cotenant is deemed permissive, the possession of one cotenant being regarded as possession for the other in the absence of notice of a hostile claim. (*West* v. *Evans*, 29 Cal.2d 414, 418 [175 P.2d 219]; *Nelson* v. *Sweitzer*, 22 Cal.App.2d 382, 386 [71 P.2d 85]; *Wood* v. *Henley*, 88 Cal.App. 441 [263 P. 870].) ■ Therefore, plaintiff's seisin and possession could be destroyed for purposes of involving the bar of section 318 as between cotenants only by showing that a title by adverse possession was acquired by defendant. (*McKelvey* v. *Rodriquez*, 57 Cal.App.2d 214, 223 [134 P.2d 870]; *Westphal* v. *Arnoux*, 51 Cal.App. 532, 534 [197 P. 395]; *Crane* v. *French*, 39 Cal.App.2d 642, 648 [104 P.2d 53]; 16 Cal.Jur. 434, 435.)

Defendant urges that she had clearly established her right to the undivided one-fourth interest here in dispute by adverse possession. She attacks the court's finding that plaintiff and defendant were cotenants, that the exclusive possession and payment of taxes by defendant was permissive and constituted possession by plaintiff, and that an undivided three-fourths interest in the property has not been held and possessed by defendant adversely to the legal title of the plaintiff. In support of her claim that she has met the requirements for the establishment of adverse possession as outlined in section 323 of the Code of Civil Procedure, defendant alludes to the fact that her claim is founded upon two recorded deeds, that the land in question is dry farming and grazing land which she has rented out, the revenue from which she has used to pay all the taxes for more than 20 years, and that she has maintained the fences on the property. She also asserts that the recordation of her deeds claiming a three-quarters interest in the property, and the change in the tax rolls to reflect this was notice of her adverse claims to plaintiff. Finally, she maintains that plaintiff's own testimony relating to a letter received from defendant containing an offer to buy plaintiff's one-fourth interest was evidence of plaintiff's knowledge of defendant's claim to a three-fourths interest. However, this concatenation of events, culled from the matrix of testimony before the court, is utterly insufficient to overcome the finding against the establishment of a title by ad-

verse possession in favor of one tenant in common against another.

■ A person claiming title to property by adverse possession must establish five indispensable elements with respect to his occupancy of the property. These have been epitomized in the case of *West* v. *Evans*, 29 Cal.2d 414, 417 [175 P.2d 219], as follows: (1) Possession must be by actual occupation under such circumstances as to constitute reasonable notice to the owner. (2) Possession must be hostile to the owner's title. (3) The holder must claim the property as his own, under color of title or claim of right. (4) Possession must be continuous and uninterrupted for five years. (5) The possessor must pay all taxes levied and assessed upon the property during the period. The decisive question here involved is whether defendant has been in adverse possession under such facts and circumstances as would reasonably impute to plaintiff notice of the hostile claim.

■ "The exclusive occupancy by a cotenant is deemed permissive; it does not become adverse until the tenant out of possession has had either actual or constructive notice that the possession of the cotenant is hostile to him [citations]." (*West* v. *Evans, supra,* p. 418.) The factual situation in the West case bears a significant parallel to the case at bar. In the West case, a widow held a three-quarters interest in her home, while the children of her marriage were cotenants with a one-quarter interest. In 1927, the widow executed a deed to plaintiff, an adopted son with whom she was living, purporting to convey to him the entire fee. The deed was recorded and plaintiff had paid all taxes since 1927. The other cotenants had left the home prior to 1927. Plaintiff remained on the property until his marriage in 1937, while the widow continued her occupancy until her death in 1944. Plaintiff brought a suit to quiet his title to the property, contending his recordation of the deed naming him as grantee constituted constructive notice to the other cotenants that he was claiming adversely to them. It was held that adverse possession against the other tenants was not established because plaintiff never took actual, exclusive possession. The widow had continued to reside on the premises and there was no indication of any change in possession to the public generally or the other cotenants. It was further stated that plaintiff could not rely on his recordation of the deed as giving notice to the cotenants of his claim of ownership, for such recordation "is not, as a

matter of law and independent of any other fact, notice to his cotenant of the adverse character of the grantee's possession." The court distinguished *Johns* v. *Scobie*, 12 Cal.2d 618 [86 P.2d 820, 121 A.L.R. 1404], (also relied on by defendant herein) in which claimant recorded a deed to the entire fee and gained title by adverse possession, by pointing out that there was exclusive possession by the claimant who, at the time he recorded the deed, knew nothing of the existence of the other cotenants.

In the instant case, it is undisputed that from the commencement of the cotenancy, it was agreed that Winninger was to work the property and pay the taxes from any revenue received. When defendant succeeded to Winninger's interest she did not enter upon occupancy of the property but rented it. ▮ Possession by a renter, in the absence of a showing to the contrary, is presumed to be held under all the cotenants. (*Klumpke* v. *Henley*, 24 Cal.App. 35, 39, 40 [140 P. 289, 313].)

▮ A cotenant out of possession is entitled to assume that the permissive possession of his cotenant continues to be amicable until he is charged with some form of notice that such possession has become hostile. (*Faubel* v. *McFarland*, 144 Cal. 717 [78 P. 261] ; *Miller* v. *Myers*, 46 Cal. 535.) ▮ Before title may be acquired by adverse possession as between cotenants, the occupying tenant must bring home or impart notice to the tenant out of possession, by acts of ownership of the most open, notorious and unequivocal character, that he intends to oust the latter of his interest in the common property. (*Akley* v. *Bassett*, 189 Cal. 625, 641 [209 P. 576] ; *Winterburn* v. *Chambers*, 91 Cal. 170, 180 [27 P. 658] ; *Unger* v. *Mooney*, 63 Cal. 586, 592 [49 Am.Rep. 100] ; *White* v. *McManus*, 69 Cal.App. 50, 59 [230 P. 472].) ▮ Such evidence must be stronger than that which would be required to establish a title by adverse possession in a stranger. (*Winterburn* v. *Chambers*, *supra*; *Tabler* v. *Peverill*, 4 Cal.App. 671, 677 [88 P. 994] ; 1 Am.Jur., Adverse Possession, p. 821.)

The conduct and declarations of the defendant in the record before us fall far short of satisfying the rules last stated. Defendant does not claim that the decree of the probate court, awarding an additional one-fourth interest in the property to Mrs. Winninger, is binding on plaintiff herein. (*Howe* v. *Brock*, 86 Cal.App.2d 271 [194 P.2d 762] ; *Wilson* v. *Superior Court*, 101 Cal.App.2d 592 [225 P.2d 1002].) ▮ Defendant's recordation of the quitclaim deed to her of this one-fourth interest was not, as a matter of

law, and independent of any other fact, notice to plaintiff of the adverse character of defendant's possession. (*West v. Evans*, 29 Cal.2d 414 [175 P.2d 219].) ▮▮▮ Similarly, the fact of the change in the tax assessments did not serve as constructive notice, particularly when by long-standing arrangement defendant alone received the tax bills and paid all the taxes from the income of the property. The findings of the court are supported by the fact that defendant took no more actual possession of the farm after the recording of the deed than she had previous thereto; that she continued to lease the farm and pay the taxes as before, and by the absence of any evidence that she publicly and notoriously departed from the manner in which she held or used the tract of land, in such a way as would put plaintiff on notice of an adverse claim. Defendant's isolated offer on one occasion to buy what was described as plaintiff's "one-fourth of the property" is not such an unequivocal act of repudiation or ouster as would require the finding of a communication to plaintiff of a clearly indicated intent on defendant's part to claim a three-quarters interest in the estate as her own. ▮▮▮ The burden of proving every essential fact of the claim to adverse possession against a cotenant rests upon the tenant in possession. (*Sheehan* v. *All Persons*, 80 Cal.App. 393, 401 [252 P. 337]; *Christy* v. *Spring Valley Water Works*, 97 Cal. 21, 26 [31 P. 1110]; *Thomas* v. *Ash*, (Tex.Civ.App.) 199 S.W. 670, 673. See *Cory* v. *Hotchkiss*, 31 Cal.App. 443, 444 [160 P. 841].) The evidence introduced by defendant is deficient in that it fails to establish the existence of circumstances of such significance as would impart notice to plaintiff of her hostile claim.

Defendant's final contention is that plaintiff is barred by laches from maintaining the present action. It has already been pointed out that prior to about 1948, when defendant flatly informed Mrs. Norton of the extent of her claimed interest, there had been no acts or conduct of such an unequivocal exclusionary character as would impart notice to plaintiff that defendant was claiming an undivided three-fourths interest in the land in controversy. Until notice of the hostile nature of defendant's possession could be attributed to her, plaintiff was entitled to rely on the presumption of defendant's continuing amicable possession as a cotenant seised of an undivided one-half interest. ▮▮▮ The law does not fasten upon a cotenant out of possession the burden of surveillance of public records to insure that his cotenant is not acquiring adverse rights. (*Hulvey* v. *Hulvey*, 92 Va. 182 [23 S.E. 233];

490

see *West* v. *Evans,* 29 Cal.2d 414, 418 [175 P.2d 219].) Since plaintiff acted promptly upon ascertainment of the invasion of her rights, laches may not be attributed to her. Furthermore, time is only one element of laches. The doctrine of laches has been defined not merely as a delay in asserting one's rights, but such a delay as redounds to the disadvantage of another. (*Gibson* v. *Mitchell,* 9 Cal.2d 718, 725-726 [72 P.2d 740]; *Sibert* v. *Shaver,* 111 Cal.App.2d 833, 840 [245 P.2d 514]; *Long* v. *Long,* 76 Cal.App.2d 716, 722 [173 P.2d 840].) Here there has been no significant change in the status of the parties, no material prejudice has been suffered or damage sustained by defendant, nor have the rights of third parties supervened so as to make it inequitable for plaintiff to assert her rights. Defendant's argument that by the lapse of time she was deprived of the possibility of producing witnesses present at the time of the delivery of the deed or concerned with its drafting is a specious one. Any prejudice she might conceivably have sustained stems primarily from her own failure to take forthright remedial action. Despite the ambiguity on the face of the deed, defendant herself never presumed to claim an interest greater than an undivided one-half prior to 1933, nor did she at any time in all the ensuing years take direct legal action to clarify its meaning, nor did she during the trial identify witnesses she possibly might have called in her behalf. The onus of seeking a judicial determination of rights under the deed was not upon plaintiff herein in the absence of any notice that the long-accepted construction given to the deed by the cotenants and their predecessors in interest was being challenged. In short, the question of laches was addressed primarily to the sound discretion of the trier of the facts, and in the absence of a palpable abuse of discretion, the finding of the trial court will not be disturbed. (*Williams* v. *Marshall,* 37 Cal. 2d 445, 455 [235 P.2d 372]; *Bodkin* v. *Silveira,* 49 Cal.App. 2d 1, 12 [120 P.2d 910].) The record discloses substantial evidence to support the court's rejection of laches.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.