[Civ. No. 32674. Second Dist., Div. One. Feb. 21, 1969.]

HENRY M. MEYER, Plaintiff and Respondent, v. MELBA GRACE WALL, Individually and as Executrix, etc., Defendant and Appellant.

Arthur D. Guy for Defendant and Appellant.

Baird, Mooney & Baird and Woodrow W. Baird for Plaintiff and Respondent.

LILLIE, J. — Defendant, the stepdaughter of plaintiff, appeals from an adverse judgment quieting title to certain property originally acquired by plaintiff and defendant's mother (since deceased) as joint tenants. At issue is the validity of a deed executed by the deceased wife which purported to convey the subject premises to defendant daughter.

Relevant background facts are summarized as follows: Plaintiff and his wife had both been married previously; each had a daughter by such prior marriage. In 1955, ten years after their marriage, they acquired the instant prop-

erty consisting of four contiguous lots; thereafter they either constructed or moved houses onto the lots, residing in one and renting the others. Except for his duties with the Long Beach Water Department where he had been employed for some 25 years, plaintiff spent his time taking care of the property. (His wife, it appears, had never been employed.) On June 1, 1959, defendant accompanied her mother to the office of the latter's attorney where the mother executed two documents. The first, a grant deed, purported to convey the subject property to defendant "in trust," while the second, captioned "Declaration and Acknowedgment of Trust," makes reference to the grant deed, the purpose behind its execution and the uses to be made by defendant of the property thus conveyed. After defendant had signed her acknowledgment of the second document, both instruments at the mother's request were left with the attorney for safekeeping, it being further requested that they not be recorded until after the mother's death. Six weeks later a witnessed will was executed by the mother; she died in February of 1966, and the subject documents were recorded eight days following that event.

Not until the institution of proceedings to probate the mother's will did plaintiff learn that the two documents were in existence—he received published notice of the pendency of such proceedings. Although the "Declaration of Trust" called upon defendant (among other things) to "take care of my interest in said real property and collect any and all income therefrom and pay all taxes, expenses of upkeep, etc., and use the net proceeds thereof for my sole use and benefit during my lifetime," defendant admittedly carried out none of these responsibilities. Furthermore, on her part, the deceased wife conducted herself with respect to the management of the property as she did prior to the execution of the two documents in question—thus, she would collect some of the rentals and turn them over to plaintiff, and joint income tax returns were filed reflecting such rentals.

■ The trial court made a finding,[1] now asserted to lack

---

[1]Finding VII: "On June 1, 1959, after ETHEL F. MEYER executed and acknowledged said grant deed and after ETHEL F. MEYER and MELBA GRACE WALL executed and acknowledged said declaration and acknowledgment of trust, ETHEL F. MEYER physically handed said instruments to MELBA GRACE WALL and MELBA GRACE WALL then handed said instruments to Mr. Arthur D. Guy, the attorney for Ethel F. Meyer, and ETHEL F. MEYER then instructed Mr. Arthur D. Guy to hold said instruments for safekeeping until the death of ETHEL F. MEYER. At that time ETHEL F. MEYER intended to terminate the joint tenancy in said real property between herself and her husband, HENRY M. MEYER, and con-

substantial evidentiary support, bringing the facts of this case within the following principles governing such disputes: ''A deed delivered with the intent that it shall take effect only on the death of the grantor is an attempted testamentary disposition and therefore void. [Citation.] The applicable rule is well-stated in *Henneberry* v. *Henneberry,* 164 Cal.App. 2d 125 [330 P.2d 250] : 'In addition to physical delivery, and an acceptance by the grantee, to constitute a valid delivery there must exist a mutual intention on the part of the parties, and particularly on the part of the grantor, to pass title to the property immediately. In other words, to be a valid delivery, the instrument must be meant by the grantor to be presently operative as a deed, that is, there must be the intent on the part of the grantor to divest himself presently of the title. Even if the document is manually delivered, but the evidence shows that the parties or the grantor intended the document to become operative only upon death, the document is testamentary in character and void as a deed.' (P. 129.) '' (*Blackburn* v. *Drake,* 211 Cal.App.2d 806, 811-812 [27 Cal. Rptr. 651].)

 Delivery or absence of delivery is a question of fact for the trial court's determination. (*Condencia* v. *Nelson,* 187 Cal.App.2d 300, 302 [9 Cal.Rptr. 759].) Likewise factual in character is the intent to pass title, an essential element of delivery, which must be determined by the trier of fact upon all of the circumstances surrounding the transaction. (*Estate of Pieper,* 224 Cal.App.2d 670, 684-685 [37 Cal.Rptr. 46].) While apparently conceding the applicability of the above principles, appellant nonetheless points to certain of the grantor's acts and declarations which assertedly indicate an intent to pass a present title in the subject property. Thus, the deceased grantor executed a will, approximately seven weeks after the execution of the other two documents in suit, wherein reference is made to such other documents and the fact that she ''terminated an interest in certain real property . . . held by my husband and I as joint tenants, by the execution and declaration of a trust in said real property and by conveying unto my daughter MELBA GRACE WALL as trustee all of my right, title and interest in and to [such] joint ten-

currently intended to conceal such intention from HENRY M. MEYER and concurrently intended that her relationship with HENRY M. MEYER in said real property should remain unchanged until the death of ETHEL F. MEYER and concurrently intended that no title to said property should vest in MELBA GRACE WALL until the death of ETHEL F. MEYER.''

ancy property. . . ." Reference is additionally made by appellant to the Declaration of Trust which also contains a statement said to indicate the intent to pass present title.[2] Finally, appellant cites *Belli* v. *Bonavia,* 167 Cal.App.2d 275 [334 P.2d 196], for these propositions: A presumption of delivery arises from the possession of the deed by the grantee; there is a further presumption that the delivery took place at the time of execution; such presumptions are applicable even if the deed is not recorded until after the death of the grantor who, in the meantime, exercises control over the property by collecting rents, paying insurance in his own name and performing related acts of dominion.

As shown in *Blackburn* v. *Drake, supra* (211 Cal.App.2d 806), the *Belli* case is not in point because it involved an affirmance of the lower court's determination that a valid delivery had been made to the grantee.[3] The latter case is further distinguished in *Blackburn* where the court pointed out, citing *Miller* v. *Jansen,* 21 Cal.2d 473, 477 [132 P.2d 801], that possession of the instrument by the grantee raises an inference, rather than a presumption, of the fact of delivery, and "it is settled law that the inference of delivery . . . [is] rebuttable and in the face of contrary evidence . . . [is] for the trial court or jury to determine. [Citations.]" (P. 813.) Too, the facts in *Blackburn* are so strikingly parallel to those at bar that an adherence to the result there reached

[2]Reliance is also placed upon a statement of the trial court (after each side had closed) repeated in another portion of her brief, that "There is no evidence here of any statement that it was not to become effective until after her death, merely that it should be concealed from her husband." Appellant makes the serious mistake of neglecting to mention the following remarks made subsequent to that above quoted: "I would like to study your Points and Authorities more carefully. I have made some remarks about the case, but I didn't decide it." Again, after plaintiff's counsel had observed that "these cases just hold absolutely to the contrary," the court remarked: "Well, I want to study them. I am just making some comments about the way it impresses me at the moment. Those cases may cause an entirely different view of the matter. So, the matter will stand submitted."

[3]*Burke* v. *Stevens,* 264 Cal.App.2d 30 [70 Cal.Rptr. 87] (cited by appellant in oral argument) likewise involved an affirmance, the court upholding the determination below that the deceased wife intended immediately to terminate the joint tenancy in suit by the delivery of a power of attorney to Mr. Natzke, her attorney, who, following his client's instructions, executed a quit claim deed of decedent's interest to his associate (Mr. Moran) who, the following day, reconveyed the interest back to decedent. After noting that a joint tenancy may legitimately destroy a joint tenancy through a deed to a third party, the court continued: "Such a deed, of course, would necessarily have to be in proper form and presently delivered to take effect immediately and not at some future time." (Pp. 34, 35.)

becomes mandatory. Mr. and Mrs. Blackburn had acquired certain property as joint tenants; she conveyed her interest therein to her three daughters by a prior marriage, but the deed was not recorded until after her death which occurred years later; until the death of his wife the husband continued to pay the taxes, costs of repairs and improvements from earnings—the wife apparently concurring in such arrangements; the deed apparently was not recorded because (as in the instant case) the mother and stepfather had been having domestic difficulties; there was no claim of ownership by the daughters until after their mother died. ▋ "Exercise of dominion over property after the execution of a deed is incompatible with delivery and inconsistent with divestiture of title. [Citations.] While such dominion does not negate delivery as a matter of law, its incompatibility with delivery renders it a circumstance to be considered by the trier of fact on the question of delivery or nondelivery, particularly when coupled, as here, with the circumstance of nonexercise of dominion by the grantees." (P. 818.) ▋ In sum, therefore, while a prima facie case of delivery may have been made out by the evidence before us, it was overcome by other evidence of a contradicting nature the cumulative effect of which amply supports the critical finding upon which the judgment was principally based.

▋ Appellant's only other point asserts that there are irreconcilable inconsistencies between various recitals in Finding VII (fn. 1, *supra*). Thus, while the decedent "physically handed said instruments to appellant" and there and then "intended to terminate the joint tenancy between herself and her husband," she "concurrently intended to conceal such intention" from him and "concurrently intended that her relationship" with him respecting the property "should remain unchanged until" her death. According to appellant, her mother could not intend to terminate the joint tenancy on the date of the instrument's delivery and at the same time intend that her interest in the property remain unchanged until her death. Since appellant requested (and was denied) specific findings on the instant issue (Code Civ. Proc., § 634), prejudicial error is urged. In *Mashon* v. *Haddock*, 190 Cal. App.2d 151 [11 Cal.Rptr. 865], it was likewise argued that the denial of such motion (for special findings) was contrary to section 634; to such argument this court said: "We do not think this code section as amended changes in any respect the basic rules as to findings that we have set forth." (P. 167.)

These rules were there restated: "When findings are questioned, it is the duty of an appellate court to compare them with all the evidence in the case, to consider them as a whole, and to construe them liberally in support of the judgment." (P. 167.) Too, assuming *arguendo* the inconsistency urged, it must affirmatively appear that a different result would have been probable. (*Richards* v. *Oliver,* 162 Cal.App.2d 548, 567 [328 P.2d 544].) It is clear from the findings as a whole and a review of the entire record that the court intended to find adversely to appellant on the issue of valid delivery within the rules discussed in the cases mentioned earlier. Although the deed was manually handed to appellant, as the finding indicates, the evidence sustains the eventual determination that such delivery did not meet the legal requirements controlling the subject transaction.

Although unnecessary to our decision, we dispose of the subsidiary point that a joint tenant owes a legal duty to his cotenant to disclose his termination of the tenancy. In *Thompson* v. *Thompson,* 218 Cal.App.2d 804, 807 [32 Cal. Rptr. 808], this court said (citing authority): " 'Each cotenant, whether he be a joint tenant or a tenant in common, may sell or encumber his interest in the property forming the subject of the tenancy at his pleasure, regardless of the knowledge, consent, or approval of the other cotenants.' "

The judgment is affirmed.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied March 20, 1969, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1969.