Norman J. and Beverly G. MAGNESON,
Petitioner-Appellee,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent-Appellant.

No. 84–7069.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 7, 1984.

Decided Feb. 20, 1985.

Thomas W. Bettles, Post, Kirby, Noonan, Sweat, San Diego, Cal., for petitioner-appellee.

Raymond Hepper, Washington, D.C., for respondent-appellant.

Before WALLACE and BOOCHEVER, Circuit Judges, and JAMESON,* District Judge.

---

* Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

BOOCHEVER, Circuit Judge:

We are faced in this case with an issue of first impression in the Courts of Appeals: whether property acquired in a like-kind exchange with the intention of contributing it to a partnership under Internal Revenue Code § 721 is "held" for investment within the meaning of Internal Revenue Code § 1031(a).

Petitioners Norman and Beverly Magneson exchanged a fee interest in one piece of real estate for a fee interest in another. The same day they contributed the acquired real estate to a limited partnership in return for a general partnership interest. The Magnesons claim nonrecognition of gain on both the exchange and the contribution under sections 1031(a) and 721 of the Internal Revenue Code.[1] The Tax Court held that the taxpayers qualified for nonrecognition, 81 T.C. 767 (1983), and the Commissioner appeals. We affirm.

The Magnesons were the sole owners of an apartment building in San Diego, California (Iowa Street Property). They held the property for productive use in trade or business or for investment within the meaning of section 1031(a). N.E.R. Plaza, Ltd. (NER) was the sole owner of commercial property in San Diego, California, known as the Plaza Property (Plaza Property).

Pursuant to a prearranged transaction consummated on August 11, 1977, the Magnesons transferred their fee interest in the Iowa Street Property to NER in exchange for a ten-percent undivided fee interest in the Plaza Property. Thereafter, on the same day, both the Magnesons and NER transferred their interests in the Plaza Property to U.S. Trust, Ltd. (U.S. Trust), a limited partnership under California law. In exchange for cash and their ten-percent interest in the Plaza Property, the Magnesons received a general partnership interest in U.S. Trust consisting of a ten-percent equity interest and a nine-percent interest in net profits and losses. U.S. Trust was formed for the purpose of acquiring, holding, and operating the Plaza Property.

The Magnesons paid no tax on the gain realized from their exchange of the Iowa Street Property for the Plaza Property, claiming nonrecognition treatment under section 1031(a). They also paid no tax on the gain realized from their contribution of the Plaza Property to U.S. Trust, claiming nonrecognition treatment under section 721.

The parties agree that the contribution of the Plaza Property to U.S. Trust qualifies for nonrecognition of gain under section 721, which provides that "[n]o gain or loss shall be recognized to a partnership or to any of its partners in the case of a contribution of property to the partnership in exchange for an interest in the partnership." The parties also agree that the Iowa Street Property and the Plaza Property are like-kind properties within the meaning of section 1031(a), which in 1977 provided:

No gain or loss shall be recognized if property held for productive use in trade or business or for investment (not including stock in trade or other property held primarily for sale, nor stocks, bonds, notes, choses in action, certificates of trust or beneficial interest, or other securities or evidences of indebtedness or interest) is exchanged solely for property of a like kind to be held either for productive use in trade or business or for investment.

For purposes of this opinion we will use the phrase "held for investment" when discussing the holding requirement of section 1031(a), because the distinction between productive use and investment is not at issue.

## I. THE HOLDING REQUIREMENT OF SECTION 1031(a)

The Commissioner argues that the exchange of the Iowa Street Property for the Plaza Property cannot qualify for nonrecognition under section 1031(a) because the Magnesons did not "hold" the Plaza Property for investment. The

---

**1.** All references to sections, unless otherwise indicated, are to the Internal Revenue Code of 1954 as amended and applicable in the tax year 1977.

Magnesons contend that holding the property to contribute to a partnership is "holding" the property for investment. The court found for the Magnesons. The majority concluded that the contribution of the Plaza Property to U.S. Trust was a continuation of the Magnesons' investment unliquidated but in a modified form, and that therefore the Magnesons did hold the Plaza Property for investment. 81 T.C. at 771–72. We review the Tax Court's conclusions of law de novo, noting however that its opinions are entitled to respect because of its special expertise in the field. *California Federal Life Insurance Co. v. Commissioner*, 680 F.2d 85, 87 (9th Cir.1982).

■ To qualify for nonrecognition treatment under section 1031(a), the taxpayer must, at the time the exchange is consummated, intend to hold the property acquired for investment. *Regals Realty Co. v. Commissioner*, 127 F.2d 931, 934 (2d Cir. 1942); *see Margolis v. Commissioner*, 337 F.2d 1001, 1003–05 (9th Cir.1964). Numerous cases have held that the taxpayers' intent at the time of the exchange to liquidate their interest in the property acquired disqualifies the exchange from nonrecognition under section 1031(a). *See, e.g., Regals Realty*, 127 F.2d at 933–34 (intent to sell); *Click v. Commissioner*, 78 T.C. 225, 233–34 (1982) (intent to give as gift); *Lindsley v. Commissioner*, T.C.M. (P–H) 1983–729, at 3047–48 (intent to give to charity); *Land Dynamics v. Commissioner*, T.C.M. (P–H) 1978–259, at 1107–08 (intent to sell). *But see Wagensen v. Commissioner*, 74 T.C. 653, 658–59 (1980) (intent at time of exchange to hold for productive use not negated by desire to give eventually to children). It is stipulated that the Magnesons intended at the time of the exchange to hold the property for contribution to U.S. Trust. Therefore, the Magnesons' exchange can only qualify under section 1031(a) if contributing property to a partnership in return for an interest in the partnership is "holding" the property for

investment within the meaning of section 1031(a).

■ We have found no precedent on point at either the Tax Court or the circuit court level. Revenue Ruling 75–292, 1975–2 C.B. 333, relied on by the Commissioner, addresses a related question: whether a like-kind exchange followed by a transfer for stock under section 351 [2] to a controlled corporation qualifies for nonrecognition under section 1031(a). The Service ruled that the property transferred to the corporation was no longer held by the taxpayer, and gain was recognized on the exchange. *Id.* at 334. Revenue rulings, however, are not binding on this court. *Ricards v. United States*, 683 F.2d 1219, 1224 & n. 12 (9th Cir.1981) (rulings not dispositive although entitled to consideration as "body of experience and informed judgment"). More significantly, transfer to a corporation in exchange for shares is distinguishable from transfer to a partnership for a general partnership interest in several important ways.

First, a corporation is a distinct entity, apart from its shareholders, whereas a partnership is an association of its partner-investors. Shareholders have no ownership interest in the assets of a corporation; partners own the assets of a partnership. Shareholders have no participation in daily management of corporate assets and very little participation in long-term management; general partners are the managers of the partnership. Thus when the owner of property transfers it to a corporation in exchange for shares, he relinquishes ownership and control of the property. In contrast, he retains both in a transfer to a partnership for a general partnership interest.

Second, a like-kind exchange followed by a section 351 transfer, viewed as a whole, results in the exchange of property for stock. The parenthetical clause of section 1031(a) expressly excludes stock as proper-

---

**2.** Section 351 provides, in pertinent part:

(a) General rule.—No gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in

exchange for stock or securities in such corporation and immediately after the exchange such person or persons are in control (as defined in section 368(c)) of the corporation.

ty eligible for exchange, but there is no such prohibition on exchange of partnership interests. *Long v. Commissioner*, 77 T.C. 1045, 1066–68 (1981) (rejecting Commissioner's argument that partnership interests fit within exclusionary clause as choses in action or evidences of interests). Revenue Ruling 75–292 is therefore inapplicable to this case.

■ The central purpose of both sections 721 and 1031(a), as stated by the Treasury Regulations, is to provide for nonrecognition of gain on a transfer of property in which the differences between the property parted with and the property acquired "are more formal than substantial," and "the new property is substantially a continuation of the old investment still unliquidated." Treas.Reg. 1.1002–1(c), T.D. 6500, 25 Fed.Reg. 11910 (1960).[3] The regulations reflect the legislative history of the predecessor of section 1031(a). *See* H.R.Rep. No. 704, 73d Cong., 2d Sess. 12, *reprinted in* 1939–1 C.B. (pt. 2) 554, 564; *Starker v. United States*, 602 F.2d 1341, 1352 (9th Cir.1979) (section 1031 "designed to avoid the imposition of a tax on those who do not 'cash in' their investments in trade or business property"). Furthermore, as the Tax Court noted, the regulations unequivocally describe section 721 as representing a continuation, not a liquidation, of the old investment. The case law, the regulations, and the legislative history are thus all in agreement that the basic reason for nonrecognition of gain or loss on transfers of property under sections 1031 and 721 is that the taxpayer's economic situation after the transfer is fundamentally the same as it was before the transfer: his money is still tied up in investment in the same kind of property. *Koch v. Commissioner*, 71 T.C. 54, 63–64 (1978); *see Starker*, 602 F.2d at 1352; *Biggs v. Commissioner*, 69 T.C. 905, 913–14 (1978), *aff'd*, 632 F.2d 1171 (5th Cir.1980). This principle exactly describes the Magnesons' situation. Before the two transactions, their investment was a fee interest in income-producing real estate. They exchanged this property for other income-producing real estate, which they held as tenants in common with NER. The Magnesons and NER then changed the form of their ownership of that real estate from tenancy in common to partnership. They still own the income-producing real estate, and they have taken no cash or

---

**3.** The full text of Treas.Reg. 1.1002–1 is as follows:

(a) *General rule.* The general rule with respect to gain or loss realized upon the sale or exchange of property as determined under section 1001 is that the entire amount of such gain or loss is recognized except in cases where specific provisions of subtitle A of the Code provide otherwise.

(b) *Strict construction of exceptions from general rule.* The exceptions from the general rule requiring the recognition of all gains and losses, like other exceptions from a rule of taxation of general and uniform application, are strictly construed and do not extend either beyond the words or the underlying assumptions and purposes of the exception. Nonrecognition is accorded by the Code only if the exchange is one which satisfies both (1) the specific description in the Code of an excepted exchange, and (2) the underlying purpose for which such exchange is excepted from the general rule. The exchange must be germane to, and a necessary incident of, the investment or enterprise in hand. The relationship of the exchange to the venture or enterprise is always material, and the surrounding facts and circumstances must be shown. As elsewhere, the taxpayer claiming the benefit of the exception must show himself within the exception.

(c) *Certain exceptions to general rule.* Exceptions to the general rule are made, for example, by sections 351(a), 354, 361(a), 371(a)(1), 371(b)(1), 721, 1031, 1035 and 1036. These sections describe certain specific exchanges of property in which at the time of the exchange particular differences exist between the property parted with and the property acquired, but such differences are more formal than substantial. As to these, the Code provides that such differences shall not be deemed controlling, and that gain or loss shall not be recognized at the time of the exchange. The underlying assumption of these exceptions is that the new property is substantially a continuation of the old investment still unliquidated; and, in the case of reorganizations, that the new enterprise, the new corporate structure, and the new property are substantially continuations of the old still unliquidated.

This section of the regulations was subsequently changed due to incorporation of section 1002 into section 1001 as section 1001(c), but was applicable to the taxable year 1977, which is before the court in this case. *See* T.D. 7665, 1980–1 C.B. 319.

non-like-kind property out of the transaction. The Magnesons' transactions therefore fit squarely within the central purpose of section 1031. They exchanged their investment property for like-kind investment property which they continue to hold for investment, albeit in a different form of ownership.

The Commissioner, and the dissenting Tax Court judges, argue that the differences between ownership as tenants in common and ownership as a partnership are so substantial that the Magnesons cannot be regarded as having continued to hold the property for investment under section 1031(a) after the partnership contribution. Previous like-kind exchange cases have indeed looked to the nature of the taxpayer's ownership interest as well as to the nature of the property owned to determine if the section 1031(a) requirements are met. *See Estate of Meyer v. Commissioner*, 503 F.2d 556, 557–58 (9th Cir.1974) (per curiam) (general partnership and limited partnership interests not like-kind property); *Pappas v. Commissioner*, 78 T.C. 1078, 1086–87 (1982) (general partnership for general partnership qualifies as like-kind); *Long*, 77 T.C. at 1064–66 (joint venture for general partnership qualifies as like-kind); *Gulfstream Land & Development Corp. v. Commissioner*, 71 T.C. 587, 595 (1979) (joint venture for joint venture qualifies as like-kind); *cf. M.H.S. Co. v. Commissioner*, 575 F.2d 1177, 1178 (6th Cir.1978) (section 1033 condemnation and reinvestment; real property proceeds put into joint venture owning real property; not like-kind because state law converted all joint venture property into personal property of investors so exchange was real for personal and not like-kind); *Koch*, 71 T.C. at 64–65 (unencumbered fee for fee subject to 99-year leasehold interest qualifies as like-kind).

■ In application of federal tax statutes, state law controls in determining the nature of the legal interest the taxpayer holds in the property sought to be taxed. Federal law does not create or define property rights; it merely attaches tax consequences to the interests created by state law. *Aquilino v. United States*, 363 U.S.

509, 512–13, 80 S.Ct. 1277, 1279–80, 4 L.Ed.2d 1365 (1960). The dissent and the majority therefore correctly looked to California law to determine and compare the nature of tenancy in common and partnership ownership.

■ In California, a tenant in common owns an undivided interest in and is entitled to possession and enjoyment of the entire property. *Dimmick v. Dimmick*, 58 Cal.2d 417, 422, 374 P.2d 824, 826, 24 Cal. Rptr. 856, 858 (1962). Title to his interest is vested in him, he may encumber it or sell it independently of his co-tenants, *Meyer v. Wall*, 270 Cal.App.2d 24, 30, 75 Cal.Rptr. 236, 240 (1969), and the interest is devisable and descendible, *see Wilkerson v. Thomas*, 121 Cal.App.2d 479, 482, 263 P.2d 678, 680 (1953). Similarly, a partner is co-owner with his partners, as a tenant in partnership, of specific partnership property. Cal. Corp.Code § 15025(1) (West Supp.1984). A general partner has the right to possess partnership property for the purposes of the partnership, although title is not vested in him. Cal.Corp.Code § 15025(2)(a) (West Supp.1984). However, a partner's interest in specific partnership property is not assignable without concurrent assignment by all other partners, Cal.Corp.Code § 15025(2)(b) (West Supp.1984), nor subject to attachment except for partnership debt, Cal.Corp.Code § 15025(2)(c) (West Supp. 1984), nor subject to marital property rights, Cal.Corp.Code § 15025(2)(e) (West Supp.1984). On the death of a partner, his interest in specific partnership property vests in the surviving partners, not in the deceased partner's devisees or heirs. Cal. Corp.Code § 15025(2)(d) (West Supp.1984).

■ The Tax Court minority concluded from these differences that the transformation of the Magnesons' tenancy in common into a partnership interest "so changed their legal relationship to that property as to disqualify the exchange from section 1031(a) treatment." We disagree. While there are significant distinctions, we do not believe that they are controlling in determining the holding for investment issue. First, we note that the crucial question in a

section 1031(a) analysis is continuity of investment in like-kind property. Therefore, the critical attributes in the taxpayer's relationship to the property are those relevant to holding the property for investment. As both tenants in common and as general partners, the Magnesons owned an interest in the Plaza Property. As both tenants in common and as general partners, the Magnesons had the right to possess and control the property. While it is true that section 15025(2)(a) limits their possession and control to partnership purposes, the partnership purpose was to hold for investment. Under these circumstances their control as general partners is of the same nature as their control as tenants in common, in each case holding the property for investment.

The significant differences between the tenancy in common and the partnership interests lie in the voluntary and involuntary alienability of the property. Basically, the tenancy in common interest is freely alienable, but specific partnership property is not. Because the whole premise of section 1031(a) is that the taxpayer's intent is *not to alienate* the property, we believe that alienability distinctions are not dispositive. If at the time of the exchange, as here, the taxpayer intends to contribute the property to a partnership for a general partnership interest, and the partnership's purpose is to hold the property for investment, the holding requirement of section 1031(a) is satisfied despite the limited alienability of specific partnership property.

The Commissioner contends that the Tax Court majority, in focusing exclusively on the continuity of investment principle underlying section 1031(a), ignored the equally important technical requirements of the section itself. Treasury Regulation 1.1002–1(b) provides:

> The exceptions from the general rule requiring the recognition of all gains and losses ... are strictly construed and do not extend either beyond the words or the underlying assumptions and purposes of the exception. Nonrecognition is accorded by the Code only if the exchange is one which satisfies both (1) the specific description in the Code of an

excepted exchange, and (2) the underlying purpose for which such exchange is excepted from the general rule.

The Commissioner contends that this double test applies, and that even if this transaction satisfies the "underlying purpose" prong of the test, it still fails to qualify under the "specific description" prong because technically the partnership and not the taxpayers holds the acquired property. This circuit, however, rejected an analogous argument in *Starker*, 602 F.2d at 1352–53, refusing to give such a narrow construction. The Commissioner argued in *Starker* that the language of the regulation quoted above, as applied to section 1031(a), required simultaneous transfer for section 1031(a) nonrecognition. After analyzing the legislative history of section 1031(a) and concluding that it did not support the Commissioner's position, the court stated:

> [T]here is a second sound reason to question the applicability of Treas.Reg. § 1.1002–1: the long line of cases liberally construing section 1031. If the regulation purports to read into section 1031 a complex web of formal and substantive requirements, precedent indicates decisively that the regulation has been rejected.

*Starker*, 602 F.2d at 1352; *see, e.g., Coastal Terminals, Inc. v. United States*, 320 F.2d 333, 336–39 (4th Cir.1963) (cash option did not preclude section 1031(a) nonrecognition because taxpayer intended to take cash only if no property available); *Alderson v. Commissioner*, 317 F.2d 790, 793 (9th Cir. 1963) (three-corner exchange); *Biggs*, 69 T.C. at 913–14 (four-corner exchange); *124 Front Street, Inc. v. Commissioner*, 65 T.C. 6, 17–18 (1975) (taxpayer can advance money toward purchase price of property to be acquired); *Coupe v. Commissioner*, 52 T.C. 394, 405–09 (1969) (taxpayer can locate and negotiate for the property to be acquired); *J.H. Baird Publishing Co. v. Commissioner*, 39 T.C. 608, 611 (1962) (taxpayer can oversee improvements on the land to be acquired). Applying the *Starker* manner of construing the section, we decline to read into section 1031(a) the re-

quirement that the taxpayer continue to hold the acquired property by the exact form of ownership in which it was acquired. So long as, as in this case, the taxpayers continue to own the property and to hold it for investment, a change in the mechanism of ownership which does not significantly affect the amount of control or the nature of the underlying investment does not preclude nonrecognition under section 1031(a).

## II. THE STEP TRANSACTION DOCTRINE

 As an alternate position, the Commissioner contends that the step transaction doctrine should be applied in this case and would preclude section 1031(a) nonrecognition. Under this doctrine, the court must view the transaction as a whole even if the taxpayer uses a number of steps to consummate the transaction. *See Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945). A taxpayer may not secure, by a series of contrived steps, different tax treatment than if he had carried out the transaction directly. *Crenshaw v. United States*, 450 F.2d 472, 475–78 (5th Cir.1971), *cert. denied*, 408 U.S. 923, 92 S.Ct. 2490, 33 L.Ed.2d 333 (1972). Viewed as a whole, the Commissioner argues that the Magnesons have exchanged their fee interest in the Iowa Street Property for a partnership interest in U.S. Trust, which the Commissioner contends is not like-kind property under this court's decision in *Meyer*, 503 F.2d at 557–58 (general and limited partnership interests not like-kind).

 Initially, we note that it may not be appropriate to collapse the steps of this transaction, because it is not readily apparent that the transaction could have been achieved directly. The Magnesons started out with the Iowa Street Property, which was worth one tenth of the Plaza Property. NER owned 100% of the Plaza Property. NER and the Magnesons wanted to end up owning the Plaza Property together in a partnership, and the Magnesons wanted to pay for their share with the Iowa Street Property. The Magnesons could have sold the Iowa Street Property, used the proceeds to buy ten percent of the Plaza Property, and then formed the partnership with NER, but that would have added a step to the transaction, rather than being a more direct route than that taken. Alternatively, NER and the Magnesons could have formed the partnership with the Iowa Street Property and ninety percent of the Plaza Property, and then the partnership could have exchanged the Iowa Street Property for the remaining ten percent of the Plaza Property. Again, this is no more direct than the method by which the Magnesons chose to carry out the transaction. Between two equally direct ways of achieving the same result, the Magnesons were free to choose the method which entailed the most tax advantages to them. *Biggs*, 69 T.C. at 913 (quoted in *Starker*, 602 F.2d at 1353 n. 10).

 Even if we apply the step transaction doctrine, and view the transaction as an exchange of the Magnesons' fee interest in the Iowa Street Property for a partnership interest in the Plaza Property, we believe that the transaction qualifies under section 1031(a).[4] The Commissioner argues that this case is controlled by *Meyer*, which held that a general partnership interest and a limited partnership interest were not like-kind although the underlying property in each partnership was like-kind. *Meyer*, 503 F.2d at 558. *Meyer* based its holding on the significant differences between general and limited partnership interests. A general partner has "a broad spectrum of rights and liabilities," *id.* at 557, including, importantly, general liability and rights to management and control. A limited partner's rights are restricted to certain inspection and accounting rights, and the power to dissolve the partnership under certain cir-

---

**4.** We note that for transactions executed after July 18, 1984, Congress has amended section 1031(a) to exclude the exchange of partnership interests. Deficit Reduction Act of 1984, Pub.L. No. 98–369, § 77, 98 Stat. 494, 595; *see* H.R.Rep. No. 432, 98th Cong., 2d Sess. 1231–34, *reprinted in* 6B 1984 U.S.Code Cong. & Ad.News 1, 201–04 (revision aimed primarily at forbidding tax-free exchange of "burned-out" tax shelter partnership interests).

cumstances. Cal.Corp.Code §§ 15507, 15510, 15515–15517. A limited partner may not actively participate in running the business. He is "primarily an investor, dependent upon the efforts of others to make a profit," and has limited liability. *Meyer*, 503 F.2d at 558. Thus *Meyer* is based on the change in the taxpayer's ability to manage and control the property.

*Meyer* is not controlling in this case because, as discussed above, the rights of a fee owner and of a general partner to management and control are very similar. Rather than losing any participation in operating the investment property, as did the taxpayer in *Meyer*, the Magnesons as general partners are the managers of their investment, just as they were when they owned the Iowa Street Property in fee simple. Thus, we reject the Commissioner's argument that application of the step transaction doctrine disqualifies this exchange for section 1031(a) nonrecognition.

Finally, we note that a critical basis for our decision is that the partnership in this case had as its underlying assets property of like kind to the Magnesons' original property, and its purpose was to hold that property for investment. Recent Tax Court cases considering the exchange of one partnership interest for another have looked to the underlying assets of the partnerships and required not only that the partnership interests be of like kind, *e.g.*, general for general, or general for joint venture, but that the underlying assets be of like kind. *See Pappas*, 78 T.C. at 1087; *Gulfstream*, 71 T.C. at 594–96. The purpose of this scrutiny is to prevent taxpayers from creating partnerships to hold assets that are not of like kind, and then exchanging the seemingly like-kind partnership interests. In such a case, the partnership form is being used artificially to shield from recognition an exchange that otherwise would not qualify under section 1031(a), *Gulfstream*, 71 T.C. at 595, and the Tax Court properly prescribed scrutiny of the underlying assets to prevent such abuse. In the Magnesons' situation, whether we view the transaction as an exchange followed by a contribution, or as an exchange of real estate for a partner-ship interest, we will examine the purpose and underlying assets of the partnership acquired to determine if the Magnesons have a continuing investment in like-kind property. The property the Magnesons contributed to the partnership was, of course, of like-kind to their original property. The rest of the partnership property was also like-kind, and the partnership's purpose was to hold real estate investment property, the kind of property that the Magnesons initially owned. Therefore, the Magnesons' ten-percent partnership interest in the underlying assets was entirely in like-kind property to their original investment, and the transaction qualifies under section 1031(a). In contrast, if the Magnesons had made the same initial exchange for like-kind real estate, but had contributed the real estate to a partnership that did not hold it for investment, or that did not have as the predominant part of its assets other like-kind real estate, the exchange would not qualify under section 1031(a). This would be so because once the Magnesons contributed their property, the underlying assets of their investment are the other assets of the partnership, and if those assets are not of like kind to the Magnesons' original real estate investment, the Magnesons have not continued their investment in like-kind property.

Our holding in this case is limited to those situations in which the taxpayer exchanges property for like-kind property with the intent of contributing the acquired property to a partnership for a general partnership interest. Further, the taxpayer must show, as the Magnesons have here, that the purpose of the partnership is to hold the property for investment, and that the total assets of the partnership are predominantly of like kind to the taxpayer's original investment.

AFFIRMED.